The Union Central Life Insurance Company of Cincinnati, Ohio, Appellant, v. William O. Anderson et al., Appellees.

Gen. No. 9,226.

Heard in this court at the May term, 1937. Opinion filed September 9, 1937.

BERT E. McLAUGHLIN and WALLACE THOMPSON, both of Galesburg, for appellant.

CLARENCE W. HEYL, of Peoria, for appellees; HUDSON R. SOURS, of counsel.

Mr. Presiding Justice Huffman delivered the opinion of the court.

An extended statement in this case is considered necessary in order to properly present same. Appellee William O. Anderson and wife became indebted to appellant on March 1, 1926, in the sum of $13,000, which indebtedness was secured by a mortgage on certain real estate located in Knox county, Illinois. The debt was due April 1, 1936. The mortgagors became in default and appellant brought a suit for foreclosure at the June term, 1935, of the circuit court of said county. The mortgagors answered the complaint, denying appellant's right to foreclose, and filed counterclaim, setting up that appellant had entered into a composition agreement for the settlement of the debt in accordance with an application by the mortgagors with the Federal Land Bank of St. Louis, for a loan on the premises sufficient to discharge this and other obligations. It appears that on August 28, 1934, appellant executed an instrument then in use by the Federal Land Bank relative to composition agreements between creditors and debtors. In this instrument appellant agreed to accept the sum of $8,400 in full satisfaction of the mortgage indebtedness, and agreed that such sum might be paid in Federal Farm Mortgage Corporation bonds. No expiration date was fixed in the instrument. The mortgagors set up that the agreement signed by appellant together with those secured from other creditors were delivered to the Federal Land Bank of St. Louis, and that they had expended divers sums of money in and about the above transactions, and charged that appellant negligently delayed sending abstract of title to the premises to the Federal Land Bank until about November 21, 1934. The mortgagors claimed that appellant refused to accept Federal Farm Mortgage Corporation bonds in payment of the debt, and therefore that although the mortgagors and the land bank had been at all times

ready and willing to deliver to appellant $8,400 in Federal Farm Mortgage bonds, that appellant had refused to accept the same, to the mortgagors' injury and damage sustained, of $10,000. The prayer of the counterclaim was to the effect that the court should by its decree order appellant to carry out its contract and accept the above sum of money in Farm Mortgage bonds, that it be enjoined from further prosecuting the foreclosure suit, and that the mortgagors recover damages and attorney fees resulting from appellant's refusal to carry out its agreement.

The cause was referred to the master, who found the existence of the mortgage and the indebtedness; a default in the terms thereof with respect to the payment of taxes; the amount due thereunder; application for the federal loan; execution by the mortgagors of two mortgages to the Land Bank to secure the money to be advanced, together with a recording thereof; that the offer by appellant to accept the bonds in satisfaction of its mortgage debt should be construed as an offer to accept within a reasonable time; that five months had elapsed between the offer and the alleged tender, and that five months was longer than a reasonable time. The master reported that a decree of foreclosure should be entered in accordance with the prayer of appellant's complaint. Objections to the master's report were overruled and ordered to stand as exceptions in the trial court. The trial court sustained the exceptions to the master's report and on October 2, 1936, entered a decree finding that appellant was without equity and that for a good and valuable consideration it had entered into the composition agreement as set forth in the counterclaim, whereby it had agreed to accept $8,400 in full satisfaction and settlement of its debt and claim, and that it should be required to perform the contract, and accept such sum in the manner agreed upon. The de-

cree denied the counterclaimants any damages or attorney fees as prayed for. It ordered that upon the payment to appellant of $8,400 in money or the delivery to it of Federal Farm Mortgage Corporation bonds in the principal sum of $8,400, within 60 days, that the mortgage indebtedness as set out in the complaint should be canceled as fully paid and satisfied, the complaint dismissed as without equity, and the plaintiff therein forever barred from further proceedings with reference to the mortgage. The decree then provided that in default of the payment of money or bonds as above set out, the plaintiff should be entitled to a decree for foreclosure in accordance with the prayer of its complaint.

Appellant filed its notice of appeal from this decree on October 17, 1936, and appellees filed their notice of cross appeal on October 27th. It appears that after the above decree of October 2, 1936, and filing of notice of appeal by the respective parties, the attorneys for appellant and the mortgagors entered into a series of negotiations with respect to a settlement of the case in accordance with the court's decree. These negotiations started with a letter under date of October 29, 1936, from the attorney for appellant to the attorney for mortgagors, in which the attorney for appellant stated that if the attorney for mortgagors was willing to enter into a stipulation to permit the appeal and cross appeal to be dismissed by the local court, that he would advise his client to dismiss the suit upon payment of $8,400, and stating, that if this was not satisfactory, to advise him. The attorney for mortgagors, upon receipt of the above letter, replied that the suggested stipulation was satisfactory, that the $8,400 was then available, and that upon payment of same, appellee was to release the mortgage and satisfy the decree. Subsequently, on November 9, 1936, attorney for the mortgagors wrote the attorney for appellant

stating that he had heard nothing further from him regarding the intended settlement, that he was anxious to have the matter determined one way or the other, and if attorney for appellant did not intend to make the settlement, the mortgagors would tender the money to the company at Cincinnati. In response to this letter, attorney for appellant wrote that he had sent the stipulation to appellant for approval, and as soon as it was returned, he would send it to the attorney for the mortgagors. On November 14, 1936, the attorney for appellant wrote to the attorney for mortgagors stating he had just received the stipulation to dismiss the suit, together with the appeal and cross appeal, from the general attorney for appellant company, and that he therewith inclosed same for signature by the mortgagors' attorney. In this letter appellant's attorney stated he had secured the consent of his company to receive payment of the $8,400, and requested that when same was made that it be made in money. The stipulation as submitted by appellant was as follows:

"APPEAL TO THE APPELLATE COURT OF ILLINOIS, SECOND DISTRICT, FROM THE CIRCUIT COURT OF KNOX COUNTY, ILLINOIS.

"The Union Central Life Insurance Company, a corp., of Cincinnati, Ohio,

Plaintiff-Appellant

vs.

William O. Anderson, Hilda Anderson, Forrest A. Anderson and Virgil Anderson,

Defendants-Appellees.

Foreclosure No. 10553 Stipulation

"It is hereby stipulated and agreed by and between the parties to the above entitled cause, that upon the

payment of the sum of Eighty-Four Hundred ($8400.00), as provided in a decree of the Circuit Court of Knox County, Illinois, in said cause entered October 2, 1936, that the above entitled suit, and the appeal and cross-appeal in said cause, may be dismissed by the presiding judge of the Circuit Court of Knox County, Illinois, without costs to either party.

"Dated this 10th day of November, 1936.

Plaintiff-Appellant

Defendants-Appellees"

The attorney for mortgagors returned the stipulation, on November 17, to the attorney for appellee, together with a letter in which he stated he had amended it to provide that the mortgagee should release the mortgage described in the complaint, and that the original mortgage and notes might be withdrawn from the master's certificate of evidence. The attorney for appellant, upon return of the stipulation, replied that the same had been sent to the general attorney for his approval. On November 30, 1936, attorney for mortgagors wrote the attorney for appellant to the effect that he desired to make a tender and if appellant did not intend to settle the case, to please advise him at once by telephone so that the tender might be made. The matter continued along these lines until the second day of December. The attorney for appellant had not received the stipulation back from his company. Mr. William O. Anderson, and son, and Roy W. Brown representing the Land Bank, called at the office of the attorney for appellant on the afternoon of December 2nd, 1936, and there tendered $8,400 in cash, which attorney for appellant counted and took a description

thereof, but which he returned to the parties pursuant to a telegram he had received that morning from appellant company, which telegram was as follows:

"1936 Dec 2 AM 10 26

"C 41 15 Ser-Cincinnati Ohio 2 1055A

Bert E McLaughlin, Attorney at Law

220-223 Peoples Bldg

If time has expired Anderson case do not accept tender of eighty four hundred dollars

C. F. Medaris by O Raudabaugh"

Upon refusal of appellant's attorney to accept the money, the mortgagors on the next day, December 3rd, filed their petition setting up the decree of October 2nd, entered in the foreclosure suit; that appellant had perfected its appeal therefrom by filing notice of appeal and praecipe for record; that petitioners had filed their cross appeal with good intentions; setting up the series of communications and negotiations with respect to the settlement and termination of the litigation pursuant to appellant's suggestion; and the tender and refusal thereof. The petition further alleged that about noon on December 2nd, attorney for appellant telephoned the attorney for mortgagors, stating that he had been instructed not to accept the $8,400, but to insist upon a default of the mortgagors' rights with respect to the decree of October 2nd; that the suggestion and submission of the stipulation for dismissal of the suit had come from the appellant; that the mortgagors had accepted same in good faith, and relied and acted thereon accordingly; that upon being advised on December 2nd, that appellant did not intend to carry out its proposed settlement and dismissal of suit according to stipulation, the said tender of $8,400 in money was made to the attorney for appellant and refused; that thereupon the petitioners paid the money to the clerk of the court. The mortgagors further set up that they had had the money in their possession for

more than 30 days awaiting delivery of the stipulation by appellant; that they had been told the same would be accepted and a settlement made as soon as the stipulation was signed and returned; that they would sustain irreparable damage and injury if appellant was not required to carry out its agreement, and prayed that the court enter an order dismissing the complaint in foreclosure according to the stipulation and agreement, that appellant be required to accept the sum of $8,400 in satisfaction of its mortgage indebtedness and release the mortgage, and the mortgagors be permitted to withdraw the original note and mortgage from the master's certificate of evidence.

Appellant filed a reply to the above petition, which is largely a reply on the part of its attorney. The exchange of the letters and the stipulation is admitted. The attorney sets out that he used his best efforts and acted in good faith in an effort to secure the execution of the stipulation by appellant, from its general attorney prior to December 2, 1936; he denies that the stipulation is binding on appellant and charges the petitioners with delay; admits the tender of $8,400 in money on December 2nd, but avers that pursuant to instructions received from the company by telegram on that date, he was directed not to accept the tender; and denies the rights of mortgagors to have the foreclosure suit dismissed and appellant compelled to accept the above sum of money in discharge of its debt.

On January 8, 1937, the court granted the prayer of the petition of the mortgagors, as filed on December 3, 1936; finding that the money had been deposited with the clerk of the court in satisfaction of the mortgage indebtedness to appellant, in accordance with the terms of the decree of October 2, 1936; that appellant should be required to accept the same in satisfaction of its mortgage indebtedness; that the complaint of foreclosure be dismissed; that the note and mort-

gage attached to the master's report might be withdrawn and true copies substituted therefor; that said note and mortgage be canceled by the clerk of the court and surrendered to the mortgagors; that the clerk pay to appellant the said sum of money and that the same should be in full settlement, satisfaction and discharge of the mortgage indebtedness. It is from the decree of the court as above entered on January 8, 1937, upon the petition of the mortgagors filed on December 3, 1936, following appellant's refusal to accept the tender, that this appeal is prosecuted.

The trial court stated at the time of entering the decree appealed from herein, that appellant had perfected its appeal from the decree of October 2nd, by filing notice of appeal as provided by statute, together with praecipe for record, and the mortgagors had perfected a cross appeal; that as far as the circuit court was concerned, appeals by the respective parties from said decree had been perfected and the trial court had no further jurisdiction over the case, except such as might subsequently arise. The court further stated that there was nothing before it to show or indicate that the appellant had abandoned its appeal, and although the decree directed the mortgagors to pay a certain amount within a fixed time, yet since appellant had perfected its appeal therefrom, the law did not require a useless thing to be done; and in effect held that the mortgagors under the decree of October 2nd, would not be compelled to pay the money therein provided until such time as said decree became binding and conclusive as between the parties. The court then remarked that he did not consider appellant to be in a position to come into equity on the next day after the expiration of the 60-day period and say that it had decided to abandon its appeal, accept the decree as entered, and have the mortgagors declared in default thereunder, because of their failure to pay the $8,400

prior to December 2nd, and thus enforce the concluding portion of the decree, which was to the effect that upon failure of the mortgagors to pay the money within 60 days of the date of the decree, that then the plaintiff should be entitled to a decree for foreclosure in accordance with the prayer of its complaint.

Appellant perfected its appeal 15 days after the date of the decree. This fact disclosed its unwillingness to accept payment of the money as provided for therein. Until the decree became operative as a conclusive judgment against appellant, it was not bound to accept the terms thereof, nor were the mortgagors possessed of the power to exercise any rights under the decree to compel appellant to accept payment of the money provided for therein. An appeal ordinarily suspends the execution of a decree and renders the trial court powerless to carry into effect the judgment. The existing status of a case is preserved pending an appeal. Ill. State Bar Stats. 1935, ch. 110, ¶ 202; Jones Ill. Stats. Ann. 104.074 (sec. 198, ch. 110, Smith-Hurd 1935), provides that an appeal from a judgment, order or decree of the trial court shall constitute a continuance of the case in that court.

The attorney for appellant testified that subsequent to giving notice of appeal and filing praecipe for record, he communicated with his company regarding the prosecution of appeal in this case, in view of the action of the Supreme Court in denying leave to appeal in the case of *Union Cent. Life Ins. Co. v. Weber,* 285 Ill. App. 568, which was the same kind of case as this, and the same appellant. It appears that in this respect he sent the following wire to the general attorney of appellant company: "O. Raudabaugh, Central Life Insurance Co. Have just been informed that petition for leave to appeal in suit of Union Central Life Insurance Co. v. Webber was denied October 22nd. In view of this, shall I proceed in Anderson case. Answer by

return wire.'', and that he received an answer thereto by wire, dated October 28, 1936, which read: ''Do not proceed further with appeal in Anderson case. Watch for expiration of time. C. F. Mederas.'' Appellant's attorney denies that he was watching the time in order to ''trip-up'' the attorney for mortgagors, and states that after the company had wired him not to proceed with the appeal, that the only thing he could do was to make settlement, and that by ''settlement'' he meant carrying out the terms of the original decree. He states he had been authorized by the company to discontinue the appeal and that the stipulation sent by him to the attorney for the mortgagors bore his signature. There is disputed evidence in the record with reference to conversations by telephone and in person. Appellees claim they were using their best efforts to complete the settlement of the case and were prevented therefrom by the position of appellant's attorney that he could not accept payment of the money until he had the stipulation back from Cincinnati; that appellant's attorney said the case was settled, and that it would be all right to complete the settlement whenever the stipulation was received by him.

The remarks of the trial court with reference to the position of appellant, claiming it had the right to come in and announce its election to abandon its appeal at a time after the 60-day period in which the mortgagors were to pay the money had expired, and thus impose the penalty provision of the decree, at a time when the statutory period for the appeal had not expired, were appropriate to this case. Also were the remarks to the effect that the law does not require a useless thing to be done, and that so long as the appellant had signified its unwillingness to abide by the terms of the decree, there was nothing for the mortgagors to do except to await the disposition of the case by the court of review, in order to determine whether the de-

cree should become operative as a conclusive judgment between the parties.

That part of the decree from which appellant prosecuted its appeal consisted of the portion which required it to accept $8,400 in lieu of its mortgage indebtedness, because of the composition agreement that had been entered into. This was the subject matter of the litigation. There was no controversy in this case regarding the mortgage or the default thereunder. The sole matter in dispute was whether appellant should be held to the terms of the composition agreement. The conduct of appellant is such as to raise the question of estoppel. Here it appears that appellant company directed its attorney by wire on October 28, 1936, not to proceed any further with the appeal in this case, and with instructions to watch for the expiration of time. This was prior to any of the negotiations between the parties with respect to accepting the decree of the trial court and dismissing the appeal. On October 29, the next day after the receipt of the above wire, advising the attorney not to proceed any further with the appeal, is the beginning of the negotiations for the settlement of the foreclosure suit. On that day the attorney for appellant wrote a letter to the attorney for the mortgagors in which he stated: ''I have just received your acknowledgment of the notice of filing of the praecipe for record in the above cause. I have been thinking this matter over and there is not enough involved to justify very much expense. If you are willing to enter into a stipulation to permit the appeal and cross-appeal to be dismissed by the local court as soon as it convenes in November, I will advise my client to dismiss the suit upon the payment of $8400.'' This was the provision of the decree rendered in the foreclosure suit. Since appellant had already advised its attorney on the day previous to the letter, not to proceed any further with the appeal in the case,

the negotiations and stipulation proposed and submitted by appellant, were nothing more than a mere sham and pretense. The mortgagors had no knowledge that appellant had decided to abandon its appeal and accept the decree. When appellant proposed that this be done, the mortgagors agreed, accepted the representations of appellant in good faith, and relied thereon. Under such circumstances we are of the opinion that appellant is estopped from insisting upon any default on the part of the mortgagors under said decree.

To permit a litigant the right to take the requisite steps to perfect an appeal from a decree, and while such appeal is pending and the proceedings in the trial court in abeyance, to come into court on the day following the date fixed for payment in the decree, and be heard to say that it had elected to abandon its appeal, and to enforce the decree in such manner as to work a penalty on the opposite party, would be contrary to equity and good conscience. Courts have the right to determine whether the language or conduct of a party, or his counsel, amounts to a waiver or estoppel, as a matter of law. This principle applies with full force in the proceedings of a cause, from its commencement to its final termination.

Representation in courts is a necessity of civilized society, and the acts of the representative must in some degree be binding upon the party represented. When one puts his case in the hands of an attorney, it is a reasonable presumption that the authority conferred includes such actions as the attorney, in his superior knowledge of the law, may decide to be legal, proper, or necessary in the prosecution of the suit, and consequently whatever adverse proceedings may be taken by the attorney, are to be considered binding upon the client. Attorneys may waive objections with respect to pleading, or fail to file proper pleas, make

admissions of fact, and of necessity make disposition of many things that arise in and about the trial of cases.

Equitable estoppels are based on the ground of promoting the equity and justice of the case, by preventing a party from asserting his rights under a general technical rule of law when he has so conducted himself that it would be contrary to equity and good conscience to permit such party to assert such rights. In equity the doctrine has been liberally applied in the suppression of fraud and the enforcement of honesty and fair dealing. That a party can affirm the existence of an appeal to promote the purpose of a recovery, and yet at the same time treat it as a nullity, in order to shut out the opposite party from a right, benefit or defense which otherwise would have been open to him, is entirely too inconsistent with reason to leave much room for dispute.

A corporation, quite as much as an individual, is held to a careful adherence to truth in its dealings with mankind, and cannot, by representations or silence, involve others in engagements and then defeat the calculations and claims which its own conduct has superinduced.

Appellant makes reference in its brief to cases of authority and precedent, but none where the circumstances are such as exist in this case. The court cannot permit its judgments, orders and decrees to thus be made the object of a designing litigant, by permitting it to perfect an appeal therefrom, without the intention to prosecute same, and upon the expiration of the date fixed in which the opposite party shall act in order to obtain the benefits of the decree, to then come in with the statement that it had elected to abandon the appeal and enforce the penalty clause against the opposite party, who during such time was powerless to take any steps to compel a compliance with the

decree by the appellant, and who was awaiting the prosecution of the appeal and a review of the case in order that it might be determined whether such decree should become conclusive and binding between the parties. The authorities cited by appellant cannot be considered controlling under the circumstances in this case. Precedent cannot thus be permitted to embalm principle.

The decree of the trial court is affirmed.

*Decree affirmed.*