### In re PFISTER.

### PFISTER v. NORTHERN ILLINOIS FINANCE CORPORATION et al.

#### Nos. 7631, 7632.

Circuit Court of Appeals, Seventh Circuit.

Nov. 10, 1941.

Rehearing Denied Dec. 6, 1941.

Alvin H. Culver and David H. Kraft, both of Chicago, Ill., and Elmer McClain, of Lima, Ohio, for appellant.

Geo. D. Carbary, Almore H. Teschke, and Elmer C. Tobin, all of Elgin, Ill., Henry L. Cowlin, of Crystal Lake, Ill., and John V. Mooradian and Jos. N. Sikes, both of Waukegan, Ill., for appellees.

Before EVANS, SPARKS, and KERNER, Circuit Judges.

SPARKS, Circuit Judge.

On February 28, 1940, appellant filed his petition as a farmer-debtor for composition or extension of his debts under section 75 of the Bankruptcy Act, 11 U.S.C.A. § 203. His creditors did not accept his proposal, hence, on July 19, 1940, the debtor filed his amended petition under section 75, sub. s, seeking a moratorium. This amended petition was referred to the conciliation commissioner on July 20, 1940, who thereafter acted as referee under subsection s(4).

Thereafter this referee entered four orders, one on August 13, 1940, and three on September 7, 1940. The first fixed the rental and principal payments to be made by the debtor. The other orders related to the sale of what was termed perishable property. The farmer-debtor did not appeal or file a petition for review from any of these orders within the ten-day period required by section 39, sub. c, of the Bankruptcy Act, 11 U.S.C.A. § 67, sub. c. After this ten-day period had elapsed, appellant filed with the referee his two petitions for rehearing. His petition for rehearing of the order of August 13, 1940, was filed on September 16, 1940. His petition for rehearing of the orders of September 7, 1940, was filed on September 20 of that year. On September 30, 1940, the referee denied the petition for rehearing of the orders of September 7; and on November 28, 1940, he denied the petition for rehearing of the order of August 13, 1940. On October 9, 1940, the debtor filed his petition for review of the three orders of September 7; and on November 28, 1940, he filed his petition for review of the order of August 13, 1940. These petitions were dismissed by the District Court on December 16, 1940, on the ground that it did not have jurisdiction to hear them. On December 30, 1940, the debtor filed his motion in the District Court to vacate the orders of December 16, 1940. This motion was denied by the District Court on January 14, 1941.

From the orders of the District Court of December 16, 1940, and the order entered January 14, 1941, denying a reconsideration of the December 16 orders, the appellant-debtor filed notices of appeal to this court on January 14. The appeals were consolidated for hearing.

Appellant first contends that section 75, sub. s,[1] and not section 39, sub. c,[2] governs appeals and reviews in farmer-debtor cases.

We think these appeals are governed by section 39, sub. c. It is noted that

---

[1] Section 75, sub. s. "Any farmer failing to obtain the acceptance * * * [of the proposed composition or extension] if he feels aggrieved [thereby] may amend his petition or answer, asking to be adjudged a bankrupt. Such farmer may * * * petition the court that all of his property * * * be appraised, and that his unencumbered exemptions * * * be set aside to him, and that he be allowed to retain possession, under the supervision and control of the court, of any part or parcel or all of the remainder of his property, including his encumbered exemptions, under the terms and conditions set forth in this section. Upon such a request being made, the referee * * * shall designate and appoint appraisers * * *. Such appraisers shall appraise all of the property of the debtor * * * at its then fair and reasonable market value. The appraisals shall be made in all other respects with rights of objections, exceptions, and appeals, in accordance with this title: Provided, That in proceedings under this section, either party may file objections, exceptions, and take appeals within four months from the date that the referee approves the appraisal."

[2] Section 39, sub. c. "A person aggrieved by an order of a referee may, within ten days after the entry thereof or within such extended time as the court may for cause shown allow, file with the referee a petition for review of such order by a judge and serve a copy of such petition upon the adverse parties who were represented at the hearing. Such petition shall set forth the order complained of and the alleged errors in respect thereto. * * * *"

this section deals exclusively with the review of referee's orders by the district judge, while the proviso of section 75, sub. s, deals, not with petitions to review such orders, but with appeals, and the objections and exceptions upon which those appeals are based. This subsection deals only with the debtor's right to a moratorium, and the appraisal of his property for that purpose. It provides that such appraisals shall be made in all other respects, with rights of objections, exceptions and appeals, in accordance with this Act. Then follows the proviso that in proceedings under this section, either party may file objections, exceptions, and take appeals within four months from the date that the referee approves the appraisal. The debtor construes the words "this section" to mean the entire section 75 with all of its many subsections, thereby rendering section 39, sub. c, nugatory as to all matters within the purview of section 75, including the sentence next preceding the proviso in subsection s. Such construction, however, would impute to Congress an intention with which we think it should not be charged. For instance, if the orders here complained of had been entered more than four months after the referee had approved the appraisals, then, under the debtor's construction he would have lost all right of review, or appeal.

■ We think it can not be said that Congress intended that section 75 should contain all procedural limitations on matters arising under the Act. See section 75, sub. n; General Order 50(11) of the General Orders in Bankruptcy, 11 U.S.C.A. following section 53, 305 U.S. 677, 711.

■ There seems to be no doubt that Congress enacted 39, sub. c, in order to expedite all matters within the purview of the Bankruptcy Act, and its kindred relief amendments. It has served this purpose exceedingly well, and especially is this true with respect to claims which have more or less a nuisance value. Our experience is that the debtor has benefited more often and in a greater degree by the provisions of this section than have the creditors, and we see no reason why the plain language of this very useful enactment should now be stricken down by judicial construction. Our duty is to so construe both sections, if reasonably possible, that both may be effective. This can be done by construing the word "section" in the first

paragraph of section 75, sub. s, to refer only to the part of that paragraph which precedes the proviso, and we thus construe it. The orders here complained of did not arise under this paragraph, but were entered in the course of hearings, authorized under section 75, sub. s(4). Hence we think section 39, sub. c, is controlling here.

In support of the debtor's contention he relies on Benitez Sampayo v. Bank of Nova Scotia, 313 U.S. 270, 61 S.Ct. 953, 85 L. Ed. 1324. That case merely held that the status of farmer for the purposes of proceedings under section 75 of the Bankruptcy Act must be tested by the definition of the word farmer in that section rather than by the one in section 1(17) of the Chandler Act, 11 U.S.C.A. § 1(17). We think this case in no manner supports appellant's contention.

Appellant further contends that if section 39, sub. c is controlling, his petitions for review were filed in time. His argument in this respect is that his petitions for rehearing stopped the running of time for seeking review; that the finality of the orders of August 13, 1940, and September 7, 1940, was in each instance expunged by a petition for rehearing which he says was seasonably filed, entertained, and denied by the conciliation commissioner.

In support of this contention he relies upon Bowman v. Loperena, 311 U.S. 262, 61 S.Ct. 201, 85 L.Ed. 177; Wayne Gas Co. v. Owens-Illinois Co., 300 U.S. 131, 57 S.Ct. 382, 81 L.Ed. 557; United States v. Seminole Nation, 299 U.S. 417, 57 S.Ct. 283, 81 L.Ed. 316, and analogous cases. The facts in these cases are to be distinguished from those of the case at bar in that the petitions for rehearing were granted, the old judgment was vacated, and a new judgment entered after a rehearing on the merits (as in Wayne Gas Co. v. Owens-Illinois Co., supra), or on the ground that the petitions for rehearing were filed within the time provided for appeal, and the order complained of had never become final until the disposal of the petition (as in Bowman v. Loperena, supra). In the present case the petitions for rehearing were not filed within the time allowed for appeal, and each was denied.

■ Under these facts we are convinced that appellant's contention in this respect cannot prevail. In Wayne Gas Co. v. Owens-Illinois Co., supra [300 U.S. 131, 57 S.Ct. 385, 81 L.Ed. 557], the Court

said: "The granting of a rehearing is within the court's sound discretion, and a refusal to entertain a motion therefor, or the refusal of the motion, if entertained, is not the subject of appeal. A defeated party who applies for a rehearing and does not appeal from the judgment or decree within the time limited for so doing, takes the risk that he may lose his right of appeal, as the application for rehearing, if the court refuse to entertain it, does not extend the time for appeal. Where it appears that a rehearing has been granted only for that purpose the appeal must be dismissed. * * * On the contrary, the rule which governs the case is that the bankruptcy court, in the exercise of a sound discretion, if no intervening rights will be prejudiced by its action, may grant a rehearing upon application diligently made and rehear the case upon the merits; and even though it reaffirm its former action and refuse to enter a decree different from the original one, the order entered upon rehearing is appealable and the time for appeal runs from its entry." In that case the petition for rehearing was granted, and of course the court reheard the matter and rendered another decree. However, in this case, the rehearing was not had or granted. Another distinguishing feature is that it is quite apparent from the record here that appellant's petition for rehearing was filed merely for the purpose of reviving and extending the time for filing a petition for review, under which state of facts the Court in the Wayne case said an appeal should be dismissed. The leading case on this subject seems to be Conboy v. First National Bank, 203 U.S. 141, 27 S.Ct. 50, 51 L.Ed. 128, where the question is fully discussed. This case has been followed in Chicago, M. & St. P. R. R. Co. v. Leverentz, 8 Cir., 19 F.2d 915; and Chapman v. Federal Land Bank, 6 Cir., 117 F.2d 321. We find no rulings of the Supreme Court contrary to the principles set forth in these decisions.

■ Furthermore, the three orders of September 7 appear from the record to be consent orders, and of course no right of appeal exists in appellant with respect to them.

■■ However, on September 19, 1940, appellant caused to be filed with the District Court an affidavit of J. E. Dazey, stating that the affiant was then and had been for twenty-five years last past a li-censed attorney, and that he was the attorney for the debtor in this bankruptcy proceeding; that he became ill on or about the twenty-first day of May, 1940, with high blood pressure which resulted in apoplexy, and that from that time since he had not been able to attend to any case in court; that on the filing of this bankruptcy proceeding he obtained the services of one Robert E. Coulson, an attorney of Waukegan, Illinois, but at no time authorized him to take any steps in this case, except to file papers prepared by affiant and mailed to Coulson, and up and until the seventh instant affiant did not know that Coulson had made any stipulations or filed any papers of any kind or character in reference to the case at bar.

This record discloses that Coulson was an attorney of record for the farmer-debtor. He attended all hearings in this matter before the commissioner, and signed the amended petition for the debtor. He was present in court on July 25, 1940, and made a motion to set for hearing on August 13, 1940, all matters, including the petitions of appellees. On that date at the hearing on the petitions on which these orders complained of were entered, appellees had their witnesses in court and were about to proceed with their proof when Coulson voluntarily waived such proof and without solicitation from these appellees voluntarily entered into the following stipulation of record: "Hearing on Reclamation Petition and stipulations by the debtor and each of the following claimants: Hartman and Son, Northern Illinois Finance Company and the Algonquin State Bank that the personal property described in the petition is perishable within the meaning of paragraph No. 2, SubSec. S. of Sec. 75 of the Bankruptcy Act; it is further stipulated that the property described in the Reclamation Petition is not at this time claimed by debtor as exempted property."

After this stipulation was made of record, the petitions and proceedings were continued for a period of twenty days. On September 7, the debtor and additional counsel appeared at the hearing. The orders complained of were then entered in the presence of the debtor's two lawyers and himself. The debtor only attended two of the hearings had before the commissioner, and his chief counsel, Mr. Dazey, never appeared, and the condition of Mr. Dazey's health was first called to the commissioner's attention by the debtor's peti-

**548**

tion filed on September 20, 1940, by an entirely different counsel of Lima, Ohio. He is still appearing for the debtor.

Admitting the truth of the debtor's showing in this respect, it furnishes no basis for the court to rule differently than was done in this case. The District Court followed the Statute and it had no power to do otherwise. The critical condition of the debtor's counsel is to be deplored, but this alone will not excuse the negligence of the debtor in failing to inform the court of his attorney's condition. The debtor was not an ignorant man, for at one time he had been president of the Pure Milk Association of the Chicago area. We are not here confronted with an exercise of the court's discretion, and if we were we could not under these facts state that the court abused it. See Curry v. Curry, 65 App. D.C. 47, 79 F.2d 172; Bergman v. Rhodes, 334 Ill. 137, 165 N.E. 598, 65 A.L.R. 344; Union Central Life Ins. Co. v. Anderson, 291 Ill.App. 423, 10 N.E.2d 46. We hold that the petitions for review were not filed in time. This being the case we are not called upon to pass upon the other questions raised.

The decree is affirmed.