titled to the present dividend (and even then it will still have overpaid).

 The argument is not without appeal and, if there were no other parties involved and National were solvent, might be compelling. Contribution between co-sureties is a well-established right and, to give Maryland this dividend by subrogating it to the creditors' rights, would be merely by-passing a separate action against National for contribution, since it would get no less if it were compelled to sue National. This is really the basis of the Pennsylvania decisions cited by Maryland. The difficulty with the argument is that National is insolvent.

■ Subrogation has been variously defined but all authorities agree that it is, in its essence, pure equity. In every case the interests of all parties who might be affected by applying the doctrine must be taken into consideration, balanced against one another and a solution arrived at which, so far as possible, is fair and just to all concerned.

■ Here the equity which Maryland asserts conflicts with the equities of the creditors of National, its insolvent co-surety. The result of granting the petition would be to give Maryland a preference pro tanto, over these remote and entirely innocent third parties. There is no compelling consideration of fairness or justice which requires this. Maryland's promptness in paying the full amount of its obligation was, of course, commendable and disposes one in its favor but, after all, it was so nominated in the bond and Maryland paid no more than the letter of its obligation required it to pay. National's failure to pay promptly was in no sense due to its fault or the fault of its creditors. Its insolvency followed that of the Commercial Bank almost immediately.

Denying the petition should not leave Maryland entirely remediless. It still has the right of contribution against National and I see no reason why it might not have enforced that right through proving the paid creditor's claim against National's estate in liquidation. As to whether it is too late to do so now and as to the amount to which it might be entitled to prove, I express no opinion. And inasmuch as National's liquidator concedes one-half the dividend I need not go into that phase of the question. What is here decided is that a surety's right to subrogation to the claim of a paid creditor may not be asserted to the detriment of innocent creditors of an insolvent co-surety.

The petition is dismissed and the rule discharged as to all sums beyond $3,452.22.

## In re WADE.
### No. 17444.

District Court, N. D. Ohio, W. D.
July 1, 1943.

Elmer McClain, of Lima, Ohio, for farmer-debtor.

George A. Meekison, of Napoleon, Ohio, for trustee.

Emmett V. Spitler, of Bowling Green, Ohio, conciliation commissioner.

KLOEB, District Judge.

The following orders of the conciliation commissioner are questioned on the petition for review:

(1) Order allowing claim of Ed S. Raydure and Maud Raydure Rogers, Executors of the Estate of Salina Raydure, deceased.

(2) Order appointing trustee.

(3) Order authorizing trustee to institute action against debtor and others to set aside alleged fraudulent conveyance and mortgage.

(1) As to the order allowing claim of Ed S. Raydure and Maud Raydure Rogers, executors of the estate of Salina Raydure, deceased, it would appear that this claim has been properly filed and allowed, that it is based upon a judgment of the Court of Common Pleas of Wood County, Ohio, and that no evidence was offered in support of the objections and no claim made that the amount as stated in the proof was not correct.

Therefore, the petition for review of this order is denied.

(2) As to the order appointing the trustee, there seems to be authority in Section 75, sub. n, Bankr.Act, 11 U.S.C.A. § 203, sub. n, for the appointment of a trustee, because that provision and General Order 50 (11), 11 U.S.C.A. following section 53, as pointed out in the certificate of the conciliation commissioner, make applicable, in a proper case, the general provisions of the Bankruptcy Act, where not otherwise provided in Section 75.

The argument of counsel for the debtor is that because there is no specific provision in Section 75 for the appointment of a trustee excepting the clause in Section 75, sub. s(3), providing for the appointment of a trustee upon liquidation, there is no authority for the appointment of a trustee. It has been held that a farmer-debtor who has filed a case under Section 75 is entitled to a discharge under the provisions of the General Bankruptcy Act (In re Gammill, D.C.Ill.1942, 45 F.Supp. 238), although there is no provision for a discharge in Section 75 except that in Section 75, sub. s(3), which provides for discharge after redemption, and in the case of Federal Land Bank v. Nalder, 10 Cir., 1941, 116 F.2d 1004, it was held that under the provisions of Section 75, sub. n, the bankrupt was entitled to a discharge under the general provisions of the Bankruptcy Act, although his rehabilitation had failed.

In the case of Armold v. Equitable Life Assurance Society, 7 Cir., 1936, 83 F.2d 530, it was held that the District Court had the power to appoint a receiver under Section 75, by reason of the provision of Section 75, sub. n, among others, although there is no specific provision in Section 75 for the appointment of a receiver.

It was also held in the case of In re Casaudoumecq, D.C.Cal.1942, 46 F.Supp. 718, that the Bankruptcy Court had the power to appoint a receiver in a Section 75 case to preserve and protect the rights of creditors and to look after the interests of the debtor.

In the case of Federal Land Bank v. Morrison, 6 Cir., 1943, 133 F.2d 613, the Court held in a Section 75 case that if the order appointing a receiver for the mortgaged realty was valid, it was governed by the provisions of the General Bankruptcy Law and General Orders in Bankruptcy.

In the case of In re Pfister, 7 Cir., 1941, 123 F.2d 543, affirmed under the title of Pfister v. Northern Illinois Finance Corp..

317 U.S. 144, 63 S.Ct. 133, 77 L.Ed. 146, it was held that under the provisions of Section 75, sub. n, and G.O. 50(11), the provision in Section 75, sub. s, as to time for taking an appeal was not exclusive, but that it was governed by Section 39, sub. c, of the General Bankruptcy Act, 11 U.S. C.A. § 67, sub. c.

(3) As to the order authorizing the trustee to commence a suit against the farmer-debtor and others for the purpose of setting aside an alleged fraudulent conveyance made to his brother and a mortgage made by the debtor upon farm property not scheduled in this case, it would seem a sorry state of affairs if a farmer debtor could convey or mortgage all of his property, other than the farm upon which he lived, to a relative or member of his family, then refinance the farm by taking it over at the appraised value and obtain a discharge from all of his debts, and leave the balance of his creditors without any remedy to set aside such conveyance by action instituted by the trustee for their benefit. There does not seem to be any good reason why the provisions of Section 75, sub. n, do not make applicable the provisions of the Bankruptcy Act with reference to a matter of this kind.

The petition for review as to the orders appointing the trustee and authorizing the trustee to commence action against the debtor and others is denied.

The findings and conclusions of the commissioner in his certificate are adopted as the findings and conclusions of the Court.

**ONE–TWO–THREE CO., Inc., v. TAVERN FRUIT JUICE CO., Inc.**

Civil Action No. 2750.

District Court, E. D. New York.

March 1, 1944.

Guggenheimer & Untermyer, of New York City (Mitchell Salem Fisher and Rudolph E. Uhlman, both of New York City, of counsel), for plaintiff for the motion.

Isaac Reiss, of New York City, for defendant, opposed.

INCH, District Judge.

This is a motion to hold the above named defendant in civil contempt and impose such punishment as may be just. The contempt relates to an alleged failure by the defendant to obey a consent decree in a patent, trade-mark, and copy-right, suit.

The motion first came on to be heard before Judge Abruzzo, who duly referred same to me because I had signed the consent decree. Counsel for each of the parties have orally argued their respective claims and submitted briefs.

The real issue is narrow but in order to understand the circumstances a brief reference to the consent decree and steps leading thereto is first deemed necessary.

Both the plaintiff and defendant are engaged in making and vending a so-called cocktail mixer liquid in display packages, largely, if not exclusively, sold to bar-