**In the Matter of BEST DISTRIBUTION CO., a California Corporation, Bankrupt.**

**Kerry M. GOUGH, Trustee, Appellant and Cross-Appellee,**

v.

**WELLS FARGO BANK, Appellee and Cross-Appellant.**

**Nos. 75–3728 and 76–1065.**

United States Court of Appeals, Ninth Circuit.

May 16, 1978.

As Corrected June 22, 1978.

---

**18.** *See* note 16, *supra.*

Robert R. Barton (argued), Oakland, Cal., for appellant and cross-appellee.

Atherton Phleger (argued), of Brobeck, Phleger & Harrison, San Francisco, Cal., for appellee and cross-appellant.

Before DUNIWAY, WRIGHT and CHOY, Circuit Judges.

EUGENE A. WRIGHT, Circuit Judge:

The trustee in bankruptcy for Best Distribution Company (Best) appeals from an order of the district court affirming the bankruptcy judge's[1] finding that he did not have summary jurisdiction over the trustee's counterclaim. Wells Fargo Bank (Bank) cross appeals from the district court's order granting a set off in the amount of the trustee's counterclaim. The cross-appeals present these questions:

(1) Did the Bank timely file its petition for review of the bankruptcy judge's order?

---

1. For clarity and uniformity, "bankruptcy judge" refers to those traditinally called "referee." "Bankruptcy court" refers to the forum over which the bankruptcy judge presides, and appeals from the bankruptcy court lie in the district court.

(2) Did the bankruptcy judge have summary jurisdiction over the trustee's counterclaim?

(3) Did the district court err in granting the set off?

## I.

### FACTS

Best was adjudicated bankrupt in December, 1968. In that proceeding, the Bank filed a creditor's claim based on Best's written guarantees of the Bank's loans to an affiliated bankrupt corporation. The trustee contended that the guarantees were invalid and counterclaimed, alleging that the Bank was indebted to Best for wrongful charges to Best's bank account and for failure to credit Best's account with two deposits.

On September 4, 1970, the bankruptcy judge issued a show cause order returnable on October 7, later amended to November 17. On the day before the return date, the Bank filed its response and objected to the bankruptcy judge's summary jurisdiction over the trustee's counterclaim. After trial, on November 4, 1971, the bankruptcy judge concluded that it had summary jurisdiction over the trustee's counterclaim, disallowed the Bank's claim, and awarded affirmative relief on the trustee's counterclaim.

On November 9 the Bank requested an extension of time to November 24 for filing its petition for review, which the court granted. On the latter date the Bank filed a second petition for an extension. The bankruptcy judge again extended the deadline, this time to December 1, on which date the Bank filed its petition for review.[2]

The district court affirmed the bankruptcy judge's order disallowing the Bank's claim,[3] and remanded for a finding whether the Bank had consented to summary jurisdiction. The bankruptcy judge found no consent. The district court vacated the bankruptcy judge's order of affirmative relief to the trustee. The court instead granted the trustee a set off against any future claims the Bank may assert against him.

## II.

### TIMELINESS OF THE BANK'S PETITION FOR REVIEW

The trustee argues that the district court was without jurisdiction to disturb the bankruptcy judge's order because the Bank did not file its petition for review within the time allowed by § 39 c of the Bankruptcy Act (11 U.S.C. § 1 et seq.). The Bank disagrees with that interpretation of the Act, and argues alternatively that its December 1 filing was due to "excusable neglect."

As originally enacted, § 39 c provided: "A person aggrieved by an order of a referee may, within ten days after the entry thereof or within such extended time as the court may for cause shown allow, file with the referee a petition for review . . ." The Chandler Act of 1938, 52 Stat. 840, 858–59. Until § 39 c was enacted, petitions for review had to be filed within a "reasonable time" unless local rules provided a specific period. *American Trust Co. v. W. S. Doig, Inc.*, 23 F.2d 398 (4th Cir. 1928); *Bacon v. Roberts*, 146 F. 729 (3rd Cir. 1906); *Crim v. Woodford*, 136 F. 34 (4th Cir. 1905); *In Re Foss*, 147 F. 790 (D.Me.1906); *In Re Grant*, 143 F. 661 (D.R.I.1906).

The purpose of § 39 c was to provide a uniform degree of finality to orders of bankruptcy judges. However, because the 10-day limitation, on its face, applied only to "person[s] aggrieved," the circuits divid-

---

**2.** The trustee, who unsuccessfully argued that the petition for review was untimely, sought review of the referee's order granting the second extension. The district court affirmed the extension order. We dismissed the trustee's appeal as premature. *In the Matter of Best Distribution Co.*, No. 72-1836 (9th Cir. May 16, 1974) (unpub. mem.).

**3.** The Bank appealed that order to this court. We dismissed on the Bank's motion. *In the Matter of Best Distribution Co.*, No. 75-1357 (9th Cir. Oct. 9, 1975) (unpub. order). That order is now final.

ed on whether the limitation merely restricted the right to file petitions for review, or whether it also restricted the district courts' discretionary power to entertain late petitions. *In Re Pfister*, 123 F.2d 543, 548 (7th Cir. 1941), *aff'd*, 317 U.S. 144, 63 S.Ct. 133, 87 L.Ed. 146 (1942); *In Re Albert*, 122 F.2d 393 (2nd Cir. 1941); *Thummess v. Von Hoffman*, 109 F.2d 291 (3rd Cir. 1940).

In 1942 the Supreme Court held that § 39 c limits only an aggrieved party seeking review as a matter of right. *Pfister v. Northern Illinois Finance Corp.*, 317 U.S. 144, 152–153, 63 S.Ct. 133, 87 L.Ed. 146 (1942). Upholding a district court's jurisdiction based upon a petition filed after the 10-day period, the Court concluded that Congress had expressed no intention to limit the discretion district courts had traditionally exercised in this area. *Id.*, citing H.R.Rep. No. 1409, 75th Cong., 1st Sess. 11; Committee Print, H.R. 12889, 74th Cong., 2d Sess. 149–50.

Dissatisfied with the lack of finality that accompanied the discretionary power to entertain late petitions, Congress amended § 39 c in 1960 for the specific purpose of legislatively overruling *Pfister*. *In Re Benefiel*, 500 F.2d 1219, 1220 (9th Cir. 1974). As amended § 39 c provides, in relevant part:

> A person aggrieved by an order of a referee may, within ten days after the entry thereof or within such extended time as the court *upon petition filed within such ten-day period* may for cause shown allow, file with the referee a petition for review . . . . Unless the person aggrieved shall petition for review of such order within such ten-day period, or any extension thereof, the order of the referee shall become final. (Emphasis added.)

11 U.S.C. § 67(c).

The purpose of the 1960 amendment was to limit the period for filing petitions for review, to give a greater and more uniform

degree of finality to bankruptcy courts' orders. The legislation limited district court's discretion to entertain late petitions. As the Senate Report explains:

> There is now uncertainty as to the finality of a referee's order under [the *Pfister*] doctrine . . . . The purpose of the bill is to fix a definite period within which an application for review must be filed.

> The bill amends section 39 c so as to make it clear that a petition for review must be filed within the prescribed 10-day period or within such extended time as the court may allow upon *petition for extension itself filed within such 10-day period.*

S.Rep. No. 1689, 86th Cong., 2d Sess., *reprinted in* [1960] U.S.Code Cong. & Admin. News, vol. 2, at 3194–95 (emphasis added).

■ We have held that Congress intended the 10-day period to be "strictly construed and compulsorily applied." *In Re Great Western Ranches, Inc.*, 511 F.2d 1021, 1024 (9th Cir. 1975), *citing In Re Benefiel, supra*. Strict construction is necessary to negate the discretion afforded the reviewing court under the *Pfister* rule and to satisfy the purpose of the 1960 amendment, *i. e.*, "to fix a definite period" for the filing of review petitions.

■ For the same reasons we conclude that a petition filed during an extension is timely only if the extension itself is granted within the 10-day period. We believe this interpretation comports with the plain, unambiguous language of the statute and the available expressions of congressional purpose. Furthermore, we think that any other interpretation would destroy the effectiveness of the 10-day filing period and herald a return to the unbridled discretion afforded district courts under *Pfister*.

■ Here the Bank did not file its petition for review within an extension granted "upon petition filed within such ten-day period." It was therefore untimely.[4]

---

**4.** The Tenth Circuit reached the opposite conclusion in *Potucek v. Cordeleria Lourdes*, 310 F.2d 527, 529 (10th Cir. 1962). It correctly noted that the purpose of the 1960 amendment was to eliminate confusion as to the finality of bankruptcy judges' orders, but it followed *Pfis-*

The Bank argues that this is an overly technical interpretation of § 39 c and suggests that we interpret § 39 c in light of the concededly inapplicable Bankruptcy Rule 802(c), which superseded § 39 c in 1973.

Rule 802(c) provides:

The referee may extend the time . . . for a period not to exceed 20 days from the expiration of the time otherwise prescribed by this rule. A request to extend the time . . . must be made before such time has expired . . . .

The Bank contends that because the extensions granted here were within the overall 30-day limit prescribed under Rule 802(c), the second extension should be deemed within the contemplation of § 39 c and valid.

We conclude, however, that Rule 802(c) is, at best, ambiguous and inconclusive support for the Bank's position and, at worst, contrary to it. The use of the words "a period" in the first sentence of that rule suggests that only one extension may be granted. Furthermore, Rule 903[5] militates against an interpretation authorizing multiple extensions. *See* Collier on Bankruptcy, vol. 13, ¶ 802.07[3], at 8–35 (14th ed. 1977).

■ The Bank argues, in the alternative, that its late filing is excusable. It cites *Thompson v. INS*, 375 U.S. 384, 84 S.Ct. 397, 11 L.Ed.2d 404 (1964), for the proposition that reliance on an erroneous ruling of a trial court is "excusable neglect."

In *Thompson*, after the applicable 60-day limitation had expired, the petitioner filed his appeal, relying on a district court's ruling that untimely post-trial motions were timely and that they had postponed the 60-day deadline. The Court concluded that in those "unique circumstances," the court of appeals erred in dismissing the appeal.

We are not presented with the same circumstances. The appellant in *Thompson* allowed the remaining 48 days in the filing period to lapse in reliance on the district

court's ruling, during which period he presumably would have filed his notice of appeal. The Bank, however, requested an extension in the eleventh hour. Its time had nearly run.

If, as the Bank then contended, it requested the second extension for cause (*i. e.*, for one reason or another, it was unable to file its petition during the first extension), then its failure to file during the first extension was not in reliance on the bankruptcy court's order granting the second extension, but for the reasons it gave in its second request. Alternatively, if the Bank actually was prepared to file during the first extension, its request for the second extension was a delaying tactic which we will not condone.

Because we conclude the Bank's petition was not filed timely, we do not consider the remaining questions concerning the order of the district court, which was entered without jurisdiction.

The order of the district court is vacated and the bankruptcy judge's order of November 4, 1971, is reinstated.

---

ter. We disagree because the legislative history identifies *Pfister* as the cause of the uncertainty the 1960 amendment sought to eliminate. *See* [1960] U.S.Code Cong. & Admin.News, vol. 2, at 3194–97.

5. Bankruptcy Rule 903 provides: "These rules shall be construed to secure the expeditious and economical administration of every bankrupt estate and the just, speedy, and inexpensive determination of every proceeding in bankruptcy."