## UNITED STATES *v.* THE SEMINOLE NATION.

No. 172.   Argued December 10, 1936.—Decided January 4, 1937.

418

Mr. *Charles E. Wyzanski, Jr.*, with whom *Solicitor General Reed, Assistant Attorney General Blair, Messrs. George T. Stormont, Charles H. Small,* and *Wilfred Hearn,* and *Miss Anne E. Freeling* were on the brief, for the United States.

Mr. *Paul M. Niebell,* with whom *Mr. W. W. Pryor* was on the brief, for respondent.

MR. JUSTICE BUTLER delivered the opinion of the Court.

An Act of Congress approved May 20, 1924, 43 Stat. 133, authorized the above named court to adjudicate claims of the Seminole Nation against the United States, declared all forever barred unless suit be brought within five years, directed adjudication of claims of the United States against that nation and gave right of review in this court. A Joint Resolution of May 19, 1926, 44 Stat. 568, permitted plaintiff to bring separate suits on one or more causes of action. Joint Resolution of February 19, 1929, 45 Stat. 1229, extended time for commencing suits to June 30, 1930. February 24, 1930, plaintiff filed its petition praying judgment in respect of causes of action alleged to have arisen after July 1, 1898. Plaintiff obtained leave and, September 19, 1934, filed an amended complaint containing allegations in respect of the claims alluded to in the original petition and attempted to set up other causes of action. But the period within which defendant permitted suit had long since expired. On December 2, 1935, the court filed its special findings of fact, conclusions of law and opinion and entered judgment in favor of plaintiff for $1,317,087.27.

1. Plaintiff contends that the petition for the writ of certiorari came too late and that therefore this court is without jurisdiction. The petition was filed under 28 U. S. C., § 288 (b). Section 350 limits the time to three months after entry of judgment. Defendant filed timely motion for new trial which was overruled March 2, 1936. May 13 it applied for leave to file a second motion for new trial. The application stated that it was made pursuant to 28 U. S. C., § 282,[1] and that the motion was attached to the application. The court granted leave and defendant, May 18, filed its second motion for a new trial. The record does not include the motion. After hearing argument the

---

[1] R. S., § 1088; Judicial Code, § 175; Act of March 3, 1911, 36 Stat. 1141.

court, June 8, overruled the motion. July 8, defendant filed petition for certiorari.

Plaintiff assumes that defendant's second motion for a new trial was made under § 282 and argues that the running of time allowed for filing petition for certiorari was not postponed until the court disposed of that motion. But it does not appear that the motion was in fact one authorized by § 282. Aside from mere recital in the application for leave, there is nothing to indicate that it was not one made under Rule 91 of the Court of Claims.

That rule declares: "Whenever either party desires to question the correctness or the sufficiency of the court's conclusions on its findings of fact or to amend the same, the complaining party shall file a motion which shall be known as a motion for a new trial. All grounds relied upon for any or all of said objections shall be included in one motion. After the court has announced its decision upon such motion no other motion for a new trial, except that provided by United States Code, title 28, section 282, shall be filed by the same party unless by leave of court. Motions for new trial, except as provided by section 175 of the Judicial Code (U. S. Code, title 28, sec. 282), shall be filed within 60 days from the time the judgment of the court is announced."

Section 282 provides: "The Court of Claims, at any time while any claim is pending before it, or on appeal from it, or within two years next after the final disposition of such claim, may, on motion, on behalf of the United States, grant a new trial and stay the payment of any judgment therein, upon such evidence, cumulative or otherwise, as shall satisfy the court that any fraud, wrong, or injustice in the premises has been done to the United States; . . . "

The rule expressly excepts motions under § 282 from those for the filing of which leave of court must be obtained. The statute plainly implies that in accordance

with its terms defendant may as of right apply for a new trial. The record does not contain anything to indicate that it was one made upon evidence or otherwise in accordance with statute. Cf. *In re District of Columbia*, 180 U. S. 250, 253. In the absence of definite showing to that effect, it will not be held that the United States applied for or that the court entertained and granted an application for leave so expressly shown to be unnecessary. On this record, it is reasonably to be inferred, and we find, that the second motion was one filed in accordance with the rule under which application for leave was necessary and not one authorized by the statute for the filing of which permission of the court was not needed. It is clear that the three months' period, § 350, did not commence to run until the court disposed of that motion and did not expire until long after the defendant had filed its petition for this writ. It is well settled that the time within which application may be made for review in this court does not commence to run until after disposition of motion for a new trial seasonably filed and entertained. *Brockett* v. *Brockett*, 2 How. 238, 240. *Texas & Pacific Ry. Co.* v. *Murphy*, 111 U. S. 488, 489. *United States* v. *Ellicott*, 223 U. S. 524, 539. *Citizens Bank* v. *Opperman*, 249 U. S. 448, 450. *Morse* v. *United States*, 270 U. S. 151, 153–154. *Gypsy Oil Co.* v. *Escoe*, 275 U. S. 498. This court has jurisdiction.

2. The jurisdiction of the lower court was limited to claims sued on before the expiration of the period within which the United States consented to be sued. It did not extend to any cause of action which was not alleged in plaintiff's original petition. As the United States may not be sued without its consent, causes of action not alleged within the period allowed may not be enforced. *Finn* v. *United States*, 123 U. S. 227, 232. The amended petition was not filed within the time allowed; no cause of action was by it brought within the power of

the court. *Taylor Co.* v. *Anderson,* 275 U. S. 431, 438–439. *B. & O. S. W. R. Co.* v. *Carroll,* 280 U. S. 491, 495. The judgment may not be sustained as to any item that is not included in a cause of action set up in the original petition or that was by the findings of the lower court or otherwise put upon a ground not there alleged. *Harrison* v. *Nixon,* 9 Pet. 483, 503. *Boone* v. *Chiles,* 10 Pet. 177, 209. *Garland* v. *Davis,* 4 How. 131, 148. It may not be upheld as to any item that is not supported by definite findings of fact extending to all essential issues and which, unaided by statements in the court's conclusions of law or its opinion, are clearly sufficient to entitle plaintiff to recover. *United States* v. *Esnault-Pelterie,* 299 U. S. 201, 205.

The original petition is in paragraphs designated by roman numerals; the substance of each may be briefly shown:

I. Reference is made to the Act conferring jurisdiction. II. Plaintiff for many years was the owner of funds held in trust by defendant; there existed various treaties and agreements between plaintiff and defendant whereby the trust funds were to be managed and invested by defendant and the interest thereon paid over to the national treasurer of plaintiff. III. From and after passage of the act of June 28, 1898, 30 Stat. 495 (called the Curtis Act) defendant impounded all funds of plaintiff, refused to further pay them to plaintiff's national treasurer and proceeded to disburse them for various purposes. IV. The only authority given by that Act for the disbursement of plaintiff's funds is § 19.[2] After that Act, Congress passed others giving authority for the expenditure of plaintiff's funds, but no subsequent act gave authority for the ex-

---

[2] "That no payment of any moneys on any account whatever shall hereafter be made by the United States to any of the tribal governments or to any officer thereof for disbursement, but payments of all sums to members of said tribes shall be made under direction of

penditure of the funds hereinafter mentioned. VI. From "July 1st, 1898, until the present time, defendant, in violation of its duty as trustee of the funds of plaintiff, in violation of the rights of plaintiff under its various treaties and agreements with defendant, and without authority of Congress, has spent large sums of the trust funds of plaintiff." VII. At all times mentioned in the petition R. S., § 2097, was in force.[3] VIII. "Defendant has thus spent, in violation of law, a large amount of the trust funds of plaintiff." The exact amount will be shown by the books and records of defendant.

The prayer of the petition is that defendant be required to file in this cause a statement showing its expenditures of plaintiff's funds "during said period," the purposes for which, and dates when, such expenditures were made, and the authority of law, if any, which authorized defendant to make such expenditures; "that, if necessary thereafter, plaintiff be permitted to amend this petition" and that plaintiff have judgment against the defendant in such sum or sums as shall appear to the court to have been expended without authority of law, with interest at six per cent.

This petition does not include any cause of action that accrued prior to July 1, 1898. Nor is recovery sought on mere failure of defendant to pay plaintiff's funds to its national treasurer or to the Seminoles per capita. The gist of the petition is that defendant disbursed funds of plaintiff for "various purposes" (par. III); and in viola-

the Secretary of the Interior by an officer appointed by him; and per capita payments shall be made direct to each individual in lawful money of the United States, and the same shall not be liable to the payment of any previously contracted obligation." 30 Stat. 502.

[3] "No funds belonging to any Indian tribe with which treaty relations exist shall be applied in any manner not authorized by such treaty, or by express provisions of law; nor shall money appropriated to execute a treaty be transferred or applied to any other purpose, unless expressly authorized by law." 25 U. S. C., § 122.

tion of its duty as trustee and of plaintiff's rights under "treaties and agreements" and "without authority of Congress, has spent large sums of the trust funds of plaintiff" (par. VI). The petition extends to no amount not "thus spent" (par. VIII). It prays statement by defendant only as to "expenditures" of plaintiff's funds "during said period," and seeks judgment only for such sums as appear to the court to have been "expended."

While the amended petition came too late to bring in any additional cause of action or to change grounds on which plaintiff rested its suit, it will be taken into account to the extent that it usefully gives plaintiff's statement of details of causes of action alleged in the original petition and for comparison with the court's special findings of fact. It describes 13 claims; ten of these are in whole or in part included in the judgment. The following statement shows: (1) Paragraphs of the amended petition; (2) Amounts claimed in each; (3) Items identified by arabic numbers used in the opinion below; (4) Amounts of items considered; (5) Findings identified by roman numerals; (6) Amounts included in the judgment; (7) Amounts excluded below.

| (1) | (2) | (3) | (4) | (5) | (6) | (7) |
|-----|-----|-----|-----|-----|-----|-----|
| III | $63,353.42 | | | | | |
| | | 1 | $61,563.42 | IV | $61,563.42 | |
| | | 4 | 1,790.00 | VII | 1,790.00 | |
| IV | 304,551.28 | | | | | |
| | | 2 | 150,000.00 | V | | $150,000.00 |
| | | 3 | 154,551.28 | VI | 154,551.28 | |
| V | 90,597.20 | | | | | |
| | | 5 | 3,097.20 | IX | 3,097.20 | |
| | | | 750.00 | | 750.00 | |
| | | | 57,500.00 | | 57,500.00 | |
| | | | *[29,250.00] | | | *29,250.00 |
| VI | 15,000.00 | | | | | |
| | | 6 | 15,000.00 | X | | 15,000.00 |
| VII | 10,000.00 | | | | | |
| | | 7 | 10,000.00 | XI | 9,068.24 | 931.76 |

*Not dealt with in the opinion. This amount is made up of a duplication of $26,750, interest for 1899–1909 excluded from consideration because considered in item 8, plus seeming error of $2,500 in calculation of judgment allowed.

Cont'd

| (1) | (2) | (3) | (4) | (5) | (6) | (7) |
|-----|-----|-----|-----|-----|-----|-----|
| VIII | 864,702.58 | | | | | |
| | | 8 | 864,702.58 | XII | 864,702.58 | |
| IX | 154,455.30 | | | | | |
| | | 9 | 154,455.30 | XIII | 154,455.30 | |
| X | 66,247.37 | | | | | |
| | | 10 | 51,460.08 | XIV | | 51,460.08 |
| | | 11 | 3,909.96 | XIV | 3,909.96 | |
| | | 12 | 4,348.74 | XV | 4,348.74 | |
| | | | †[6,528.59] | | | †6,528.59 |
| XI | 178,533.42 | | | | | |
| | | 13 | 178,533.42 | XVI | 1,350.55 | 177,182.87 |
| | $1,747,440.57 | | $1,747,440.57 | | $1,317,087.27 | $430,353.30 |

†Not dealt with in the opinion. This amount apparently was not claimed in proposed findings of fact, although claimed in amended petition, i. e., included in claim for $66,247.37.

The lower court disallowed all of items 2, 6 and 10 and parts of 5, 7 and 13. Plaintiff has not asked review. Defendant's prayer for reversal does not extend to any part of items 11, 12 or 13.

Items 1, 4 and 7 are by the amended petition indicated to be outside the period alleged in the original petition—from July 1, 1898, to the time of the commencement of the suit. The findings fail to show that any part of these amounts is included in any cause of action alleged in the original petition to have accrued in that period. All of these items must be deducted from the judgment.

Item 3, $154,551.28, is a part of $304,551.28 first described in the amended petition. Of that amount $150,000 (item 2) was disallowed. The amount included in the judgment rests on special finding VI which is to the effect that commencing with the Act of July 26, 1866 (14 Stat. 263-264) up to and including the Act of April 30, 1908 (35 Stat. 91) Congress annually appropriated $25,000 being the interest at 5% on the $500,000 fund provided in the eighth article of the Treaty of 1856 for the purpose of making per capita payments, and that the United States disbursed the sums thus appropriated for the years involved, either by direct payment per capita to members

of the tribe, or by cash payment to the treasurer of the Seminole Nation, *except* interest in years between 1867 and 1879 inclusive, the total of which is $92,051.28, and interest in the years 1907 to 1909 inclusive, amounting to $62,500; and that these items of interest were neither disbursed to members of the tribe nor paid to the treasurer.

But defendant's retention or other disposition of the amounts of interest in years between 1867 and 1879 is not shown by the findings to have been within the period covered by the original petition. For that reason $92,-051.28 must be deducted. And for another reason all of item 3 must be eliminated from the judgment. The finding merely shows that defendant did not pay or disburse the amount included in that item to the national treasurer or to members of the tribe. That is not enough. The suit is not to recover money withheld but only for that illegally disbursed or spent by defendant.

Item 5—$90,597.20—as described in the amended petition is interest on the permanent school fund provided for in the third article of the Treaty of 1866. The judgment includes $3,097.20 of that item on account of interest for the years 1867–1874. But it is not shown that any cause of action accrued in respect of that sum after July 1, 1898. The item also includes $750, a part of the interest for 1907 found not to have been paid by defendant to the tribal treasurer. But, as shown above, mere failure so to pay is not sufficient to constitute any cause of action alleged in the original petition. The balance of item 5 includes $57,500, payments to the tribal treasurer before the passage of the Curtis Act and before commencement of the period covered by the original petition. They must be excluded. The remainder of this item is also a part of item 8 about to be considered. See opinion below, p. 154.

Item 8—$864,702.58—is based on a claim which is described in the amended petition, in substance as follows:

After the passage of the Curtis Act, defendant impounded all the funds of plaintiff, and assumed full administrative control over the disbursement of same. Notwithstanding "the plain inhibition in said Section 19 that no payments thereafter should be made to 'the tribal governments or to any officer thereof for disbursement,' yet in violation of said section the defendant illegally disbursed the amounts hereinafter set forth, derived from" stated sources.[4] "Therefore, the defendant is liable to the plaintiff in the amount of $864,702.58 for the violation of said Section 19 of said Act of June 28, 1898."

This claim is not included in the original petition. It states defendant refused to make payments to the tribal treasurer. Finding XII shows that defendant did pay to the treasurer all the amounts included in the item. The original petition not only failed to lay foundation for the claim but in effect excluded every part of it. The item is included in the judgment on a basis of fact directly opposed to the allegations of the original petition relied on by plaintiff until long after the expiration of the period within which the United States permitted suit in respect of it. The plaintiff is not entitled to recover any part of the item.

3. Item 9 is $154,455.30. Unlike the items considered above, it may be held sufficiently alleged in the original petition. The amended petition, par. IX, gives details as follows: The Original Seminole Agreement ratified by Act of July 1, 1898, 30 Stat. 567, provides that $500,000

---

[4] "Treaty of August 7, 1856, Funds................. $212,500.00
Treaty of March 21, 1866, Funds................. 29,750.00
Act of March 2nd, 1899, Funds.................. 622,156.87
Indian Moneys, Proceeds of Labor Fund.......... 295.71

$864,702.58"

of the funds belonging to the Seminoles shall be set apart as a permanent school fund and be held by the United States at five per cent interest. The school fund was established March 6, 1906. Defendant, in violation of the agreement and without authority of law "disbursed from the principal thereof the amount of $154,455.30." Therefore that amount "is due the Seminole Nation from the defendant." As to it the court found that the Secretary of the Interior did disburse from the principal of the permanent school fund in 1920 and 1921 "per capita payments" amounting to $32,445.56; in 1921 "equalization of allotments," $490.22; in each of the years 1922 to 1930 payments for "Education" amounting in all to $121,-519.52. In its opinion the court said: "That Congress had the power to change the terms of the agreement and authorize these payments, is well established,[5] but we find no act of Congress that either in express terms or by necessary implication authorizes any of them. It must, therefore, be held that they were illegally made and that the Seminole 'permanent school fund'—a trust fund— was unlawfully depleted thereby. The plaintiff is entitled to recover the sum claimed."

Congress contemplated, at least as early as 1898 at the time of the passage of the Curtis Act and the ratification of the Seminole Agreement, that the tribal government was soon to be terminated. The Act of March 3, 1903, § 8, 32 Stat. 1008, declared that it should not continue after March 4, 1906. Congress, by Joint Resolution March 2, 1906, 34 Stat. 822, continued tribal existence and tribal government until all tribal property and its proceeds should be distributed among individual members. The Act of April 26, 1906, § 28, 34 Stat. 148, continued tribal existence and government for all authorized

---

[5] *Lone Wolf* v. *Hitchcock*, 187 U. S. 553, 564–567.

purposes until otherwise provided by law. By Acts passed in 1906 and 1908 Congress directed the Secretary of the Interior to take possession of all buildings used for governmental, school or other tribal purposes, together with the furniture and land pertaining thereto and to sell the same and deposit the proceeds to the credit of the Seminoles.[6] Liquidation of Seminole property and distribution of its proceeds per capita went forward under direction of Congress.[7] And, by May 25, 1918, when the Congress passed the Act making appropriations for the Bureau of Indian Affairs for the fiscal year ending June 30, 1919, under which defendant claims that the per capita payments here in question were made, the need of a permanent school fund had almost ended. At the hearing upon that measure before the House Committee on Indian Affairs,[8] the Bureau, through the Assistant Commissioner, reported that one of the two Seminole Academies had already ceased to exist, that the other was still used but that public school privileges were within the reach of almost every pupil and that the fund was not needed for the support of any other school. It was on the recommendation of the Bureau that Congress included in § 18 of this Act a clause specifically authorizing the Secretary of the Interior to pay to the enrolled members of the Seminole Tribe entitled to share in its funds, or to their lawful heirs, out of the Seminole school fund not to exceed $100 per capita and directed payment to be made under rules and regulations prescribed by the Sec-

---

[6] Act of April 26, 1906, §§ 15–17, 34 Stat. 143. Act of April 30, 1908, 35 Stat. 71.

[7] Acts: March 3, 1911, § 17, 36 Stat. 1070. August 22, 1911, 37 Stat. 44. June 30, 1913, § 18, 38 Stat. 95. March 2, 1917, § 18, 39 Stat. 983–984.

[8] House Committee Hearings, Indian Appropriation Bill, December, 1917, p. 286.

retary.[9] The Act, like earlier ones [10] and those making appropriations for fiscal years ending, respectively, June 30, 1920, and 1921,[11] contained a proviso directing that in the specified fiscal year no money shall be expended from tribal funds without specific appropriation by Congress except "Equalization of allotments, per capita and other payments authorized by law . . ." By regulations promulgated June 17, 1918, par. 14, the Secretary required disbursements to continue "until all claims are paid or until further orders of the Department."

Plaintiff does not claim that § 18 of the appropriation Act of 1918 did not specifically authorize the use of the principal to make the per capita payments here in question. But it contends authority so to use that fund ceased with the fiscal year ending June 30, 1919. The payments authorized constituted a distribution looking to the ultimate disposition of all tribal property. The provision expressed no limitation in respect of the time

---

[9] " . . . That the Secretary of the Interior be, and he is hereby, authorized to pay to the enrolled members of the Seminole Tribe of Indians of Oklahoma entitled under existing law to share in the funds of said tribe, or to their lawful heirs, out of the Seminole school fund, or any moneys belonging to said tribe in the United States Treasury or deposited in any bank or held by an official under the jurisdiction of the Secretary of the Interior, not to exceed $100 per capita: *Provided,* That said payment shall be made under such rules and regulations as the Secretary of the Interior may prescribe: *Provided further,* That in cases where such enrolled members, or their heirs, are Indians who belong to the restricted class, the Secretary of the Interior may, in his discretion, withhold such payments and use the same for the benefit of such restricted Indians. . . ." Act of May 25, 1918, § 18, 40 Stat. 580.

[10] Indian Appropriation Acts for the fiscal years beginning July 1, 1912: August 24, 1912, 37 Stat. 531; June 30, 1913, 38 Stat. 95; August 1, 1914, 38 Stat. 600; March 4, 1915, 38 Stat. 1228; May 18, 1916, 39 Stat. 148; March 2, 1917, 39 Stat. 985.

[11] Act of June 30, 1919, § 18, 41 Stat. 23. Act of February 14, 1920, § 18, 41 Stat. 427–428.

within which they were to be made. The occasion and purpose of the enactment tend strongly to negative any implication that Seminoles entitled to participate in the distribution would be barred if the Secretary failed to cause payments to be made them within the fiscal year. The provisos contained in the appropriation Acts for the fiscal years 1920 and 1921 during which the per capita payments in controversy were made reasonably may be deemed sufficient to authorize them. Weight is to be given to the Secretary's regulations, par. 13, which declared that all suspended or withheld payments were "to be disbursed at such times and in such amounts as the best interest of the persons, to whom such suspended or withheld payments are due, may demand." Plaintiff's contention that it is entitled to recover upon the ground that the per capita payments were not made within time allowed therefor is without merit. The amount of the per capita payments must be eliminated from the judgment.

As to the amount of $490.20 paid out of the school fund for "equalization of allotments," the defendant relies upon a provision in the appropriation Act of February 14, 1920, 41 Stat. 427, declaring: "That hereafter no money shall be expended from tribal funds . . . without specific appropriation . . . except as follows: Equalization of allotments . . . and other payments authorized by law to individual members of the respective tribes . . ." But defendant fails to show that the excepted payments were "authorized by law." This amount was properly included in the judgment.

As to the sum of $121,519.52 made up of payments from 1922 through 1930 for "Education," the sole question is whether Congress authorized the use of the principal of the permanent school fund for that purpose. The appropriation Acts applicable to these years authorized the Secretary of the Interior to continue Seminole

schools from the tribal funds.[12]    It must be assumed that when enacting these measures Congress took into account the fact that the Seminole school fund in pursuance of its authority had been so depleted that interest on the amount remaining in it would not meet even the lessened requirements.    Its failure to limit expenditure for education to interest on the permanent fund and adherence to substantially the same form of words yearly throughout the entire period sufficiently indicate the intention of Congress that disbursements for that purpose were not limited to the interest and that principal was to be used. The inclusion of that amount in the judgment cannot be sustained.

The judgment will be reversed and the cause remanded to the lower court with directions for further proceedings in accordance with this opinion.

*Reversed.*

MR. JUSTICE STONE took no part in the consideration or decision of this case.

---

[12] Act of March 3, 1921, 41 Stat. 1243; Act of May 24, 1922, 42 Stat. 575; Act of Jan. 24, 1923, 42 Stat. 1196; Act of June 5, 1924, 43 Stat. 398; Act of March 3, 1925, 43 Stat. 1148; Act of May 10, 1926, 44 Stat. 460; Act of Jan. 12, 1927, 44 Stat. 948; Act of March 7, 1928, 45 Stat. 216; Act of March 4, 1929, 45 Stat. 1577.