Juan Crespo Hernández, Plaintiff and Appellee-Appellant, v. Carmelo Crespo, Defendant and Appellant-Appellee.

No. 9118. Argued June 1, 1945.—Decided November 13, 1945.

*Luis Mercader* and *A. Muñoz Igartúa* for appellant-apellee. *Pedro E. Anglade* and *Angel G. Avila* for appellee-appellant.

Mr. Justice De Jesús delivered the opinion of the court.

Juana Hernández Vélez died intestate in the city of Arecibo on May 17, 1944. Three days prior to her death she executed a deed of sale wherein she conveyed to her foster son, Carmelo Crespo, the house which she owned, for $400 which she confessed having received from the purchaser prior to the execution of the deed. The deceased left a legitimatee son, Juan Crespo Hernández, plaintiff herein, who was declared sole and universal heir of Juana Hernández Vélez by the District Court of Arecibo. In order to recover the house in question, which constituted the whole inheritance left by his mother, Juan Crespo Hernández brought this action in the District Court of Arecibo alleging that the sale in favor of the defendant was void inasmuch as there had been no consideration, as the one that appeared in the deed was simulated, and that said alleged sale unlawfully

deprived him of his hereditary rights in the patrimony of his mother. The defendant alleged that the contract of sale was not simulated and that he had paid for the property the amount stated in the deed. The lower court found that the evidence did not show the existence of any consideration but that it disclosed Juana Hernández Vélez' intention to convey to her foster son her title to the property; that this being her intention, which was carried out by a public instrument, the transaction—which the alleged vendor and the purchaser labeled a sale—should be considered as a gift. However, since the deceased could not dispose of two-thirds of the value of the property by gift, such two-thirds being the legitimate portion which belonged to her legitimate son, she could give her foster son only one-third of the property. Civil Code § 596. Based on this conclusion, the court rendered judgment declaring that the plaintiff was the owner of two-thirds of the property, house and lot, and the defendant of the remaining third by gift and ordered the defendant to return to the plaintiff two-thirds of the rents yielded or that should have been yielded by the property from the death of Juana Hernández Vélez until its delivery to the plaintiff, at the rate of $10 monthly plus costs without including attorney's fees.

Both parties appealed. Plaintiff contends that the court erred in changing the theory of the case as set forth in the pleadings and resulted from the evidence; in failing to order the defendant to pay the total amount of the rents yielded or that should have been yielded, and in failing to impose on the latter attorney's fees.

The defendant, in turn, urges that the court erred in changing the theory of the case, in not sustaining his contention that the transaction carried out between himself and his foster mother had been a sale, and in ordering him to return to the plaintiff two-thirds of the rents.

The evidence clearly shows that there was no consideration in the alleged contract of sale, and it was so found by the trial court; and that the defendant never owned the

amount of $400 in which the property was valued according to the deed. To this end let us examine the reasoning of the trial judge:

"In support of its conclusion that the execution of the deed was an act of liberality and not a transaction of sale, the court states the following grounds:

"The close relationship between defendant and Juana Hernández, who brought him up as if he were her own legitimate son.

"The property is worth nearly three times as much as the $400 stated in the deed. The lot without the house is almost worth $400.

"The defendant at the time of the execution of the deed, and for some time prior thereto, was a mere employee in a small place of business. Plaintiff's evidence shows that he earned $4 weekly. Defendant himself testified that he earned $30 and to conceal his insolvency and prove that he was financially able to buy a property with his limited salary, he stated that he received a 20 per cent. commission, which the court did not believe, not only because a business of that kind and of such limited means does not pay such high commissions, but also because the amounts which he alleged to have received from the 20 per cent commission are so exaggerated as to be absurd, considering the bulk and the kind of business. Moreover, the defendant testified that he had never had bank accounts nor did he offer any evidence tending to show that he was an industrial partner in the business. His pecuniary condition, which may be gathered from his appearance and manner of testifying, could not enable him to buy for cash a property which was worth at least $1,000.

"Furthermore, and this seems most striking, the notary attests in the deed that the vendor confessed that she had received the $400 prior to the execution of the deed, but defendant's evidence tends to show, and describes in detail that the money was delivered in cash at the time of the execution; and it is likewise noticeable that Mrs. Hernández should give all the money to her brother who testified that he had used the money to pay certain bills and tried to present some receipts, but the alleged holders of those bills were not called to the witness stand.

"Another fact which calls our attention is that a foster child who had received everything from Mrs. Hernández and who lived with her in the same house, should not have paid the expenses of her illness, if he really had money to buy the property."

■ We agree with both parties that the court changed the theory of the case which appeared from the pleadings and the evidence introduced. Plaintiff's claim was grounded on the theory that the sale was void and that it prejudiced his hereditary rights. The defendant resisted plaintiff's contention claiming that the sale was valid. Even on appeal defendant urges that he did not receive any gift from his foster mother and, as we have pointed out, neither the pleadings nor the evidence tends to show that this was the real issue. This being so, the court erred in sustaining such theory. *U. S.* v. *Seminole Nation,* 299 U. S. 417.

In view of the conclusions reached by the trial judge, there was no other alternative but to declare that the property wholly belonged to the plaintiff and, consequently, that the defendant was bound to refund all the rents yielded or that should have been yielded from the death of Juana Hernández Vélez until the delivery of the property. Civil Code, § 603.

In accordance with the preponderance of the evidence as weighed by the lower court, the judgment appealed from must be reversed and another rendered instead sustaining the complaint and ordering the defendant to deliver to the plaintiff the property claimed within a period of ten days from the receipt of the mandate in the lower court plus the rents of the property at the rate of $10 monthly from the date of the alleged sale until the delivery of the property, with costs and $75 for attorney's fees.