JUAN CRESPO HERNÁNDEZ, demandante, apelado y apelante, *v.* CARMELO CRESPO, demandado, apelante y apelado.

Núm. 9118.—*Sometido:* Junio 1, 1945. *Resuelto:* Noviembre 13, 1945.

*Luis Mercader* y *A. Muñoz Igartúa,* abogados del apelante apelado;
*Pedro E. Anglade* y *Ángel G. Avila,* abogados del apelado apelante.

EL JUEZ ASOCIADO SEÑOR DE JESÚS emitió la opinión del tribunal.

Juana Hernández Vélez falleció ab intestato en la ciudad de Arecibo el 17 de mayo de 1944. Tres días antes de morir otorgó una escritura de compraventa por la cual trasmitió a su hijo de crianza Carmelo Crespo, la casa que poseía, por precio de $400 que confesó haber recibido del comprador con anterioridad al otorgamiento de la escritura. La finada dejó un hijo legítimo, Juan Crespo Hernández, el demandante, el cual fué declarado único y universal heredero de Juana Hernández Vélez por la Corte de Distrito de Arecibo. A fin de reivindicar la casa en cuestión, la cual constituía todo el capital relicto por su madre, Juan Crespo Hernández instó este pleito en la Corte de Distrito de Arecibo alegando que la venta a favor del demandado era inexistente por no haber mediado precio alguno, ya que el que figuraba en la escritura era simulado; y que la supuesta venta le privaba ilegalmente de sus derechos hereditarios en el patrimonio de su madre. El demandado alegó que el contrato de compraventa no era simulado y que había pagado por el inmueble el precio que se expresó en la escritura. La corte inferior declaró probado que no había mediado precio, pero que la evidencia demostraba que fué la intención de Juana Hernández Vélez trasmitir su derecho de propiedad sobre la casa al hijo de crianza; y que siendo ésa su intención, y habiéndola llevado a cabo por escritura pública, debía considerarse que la transacción—que la supuesta vendedora y el pretendido comprador habían denominado compraventa —era una donación. Empero, como la finada no podía dis-

poner por donación de dos terceras partes del valor del inmueble por ser ésa la legítima forzosa que correspondía a su hijo legítimo, solamente pudo donar al hijo de crianza la tercera parte de la propiedad. Código Civil, art. 596. Basada en esa conclusión la corte dictó sentencia declarando que el demandante era dueño de dos terceras partes del inmueble, casa y solar, y el demandado de la tercera parte restante a título de donación y condenó al demandado a devolver al demandante dos terceras partes de las rentas produducidas o debidas producir por el inmueble desde la muerte de Juana Hernández Vélez hasta su entrega al demandante, a razón de $10 mensuales, más las costas sin incluir honorarios de abogado.

Las dos partes apelaron. El demandante señala como errores el haber variado la teoría del caso según resulta de las alegaciones y de la evidencia del demandante y demandado; el no condenar al demandado al pago de todas las rentas producidas o debidas producir y el no imponerle el pago de honorarios de abogado.

El demandado a su vez señala como error el haber variado la teoría del caso y no haber sostenido su contención de que la transacción verificada entre él y su madre de crianza era una de compraventa y el condenarle a devolver al demandante las dos terceras partes de las rentas.

Un examen de la evidencia revela claramente que en el supuesto contrato de compraventa no medió precio alguno, conforme encontró probado el Juez; y que el demandado nunca tuvo la cantidad de $400 que se fijó en la escritura como precio de la finca. A este efecto veamos el razonamiento del Juez sentenciador.

"Para fundar su convicción de que el otorgamiento de la escritura fué un acto de liberalidad y no una venta, la Corte expone las siguientes razones:

"Las relaciones de íntima familiaridad entre el demandado y Juana Hernández, que lo crió y lo tuvo como si fuera un hijo legítimo,

"El precio de la finca es cerca de tres veces el valor de $400 que se fijó en la escritura. El solar sin la casa, casi vale los $400.

"El demandado, al tiempo del otorgamiento y por un tiempo razonable antes, era sólo un empleado de un pequeño comercio. La prueba del demandante dice que ganaba $4 semanales. El propio demandado declaró que ganaba $30 y para disimular su insolvencia y para demostrar la posibilidad económica de comprar una finca con tan poco sueldo, dijo que le daban una comisión de un 20 por ciento, hecho que la corte no ha creído, no sólo porque en un negocio tan pequeño y de esa clase no se dan esas comisiones, sino porque las cantidades que él dijo recibió por la comisión de sólo un 20 por ciento, son exageradamente absurdas si se tiene en cuenta la importancia y clase de negocio. Además, el demandado declaró que nunca había tenido cuentas con un banco ni se probó con alguna prueba auténtica o relación comercial, que él fuera socio industrial del negocio. Su condición económica, que se observa hasta en su apariencia y modo de declarar, no le permitía comprar una finca de contado que por lo menos vale $1,000.

"Además, y esto es lo más chocante, en la escritura el Notario da fe de que la vendedora confesó que había recibido los $400 con anterioridad al acto del otorgamiento y la prueba presentada en el juicio por el demandado, tiende a demostrar y asegura con lujo de detalles, que el dinero se entregó en el acto en billetes de banco; y choca también que la señora Hernández le diera todo el dinero al hermano que declaró. Este hermano declaró que había empleado el dinero en ciertos pagos y trató de presentar unos recibos, pero no se trajeron a declarar a los supuestos firmantes de tales cuentas.

"Es también un hecho que llama la atención que un hijo de crianza que lo había recibido todo de la señora Hernández y que vivía en su propia casa, no hubiese atendido a los gastos de ella en su enfermedad, si era verdad que tenía dinero para comprar la finca."

■ Convenimos con las dos partes en que la corte varió la teoría del caso que surgió de las alegaciones y la prueba presentada. El demandante reclamaba bajo la teoría de que la venta era inexistente y perjudicaba sus derechos hereditarios. El demandado resistía la contención del demandante basándose en que la compraventa era válida. Aún en apelación insiste el demandado en que él no recibió donación alguna de parte de su madre de crianza y ni las ale-

gaciones ni la evidencia, como hemos indicado, tienden a demostrar que ésa fuese la controversia sometida por las partes. Siendo ello así, la corte erró al sostener tal teoría. *U. S. v. Seminole Nation*, 299 U. S. 417.

Dadas las conclusiones de hecho a que llegó el juez sentenciador, no cabía otra sentencia que no fuese declarando que el inmueble en su totalidad pertenecía al demandante y en su consecuencia que el demandado venía obligado a devolver la totalidad de las rentas producidas o debidas producir desde la muerte de Juana Hernández Vélez, hasta la entrega del inmueble. Código Civil, art. 603.

Procede, de conformidad con la preponderancia de la prueba, tal como la apreció la corte inferior, *revocar la sentencia apelada y dictar otra declarando con lugar la demanda y condenando al demandado a entregar al demandante la finca reclamada dentro del término de diez días después de recibido el mandato en la corte inferior, más las rentas del inmueble a razón de $10 mensuales desde la fecha de la supuesta venta hasta la entrega del inmueble, más las costas y $75 para honorarios de abogado.*