**The UNITED STATES**
**v.**
**The CREEK NATION.**
**Appeal No. 7–69.**

United States Court of Claims.
June 12, 1970.

Craig A. Decker, with whom was Asst. Atty. Gen. Shiro Kashiwa, for appellant. Ralph Barney, Washington, D. C., of counsel.

Paul M. Niebell, Washington, D. C., attorney of record, for appellee.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON and NICHOLS, Judges.

COWEN, Chief Judge.

This is an appeal from two decisions of the Indian Claims Commission. In the first, rendered on July 6, 1967, the Commission held that appellee was entitled to recover under Section 2, Clause (3) of the Indian Claims Commission Act (60 Stat. 1049),[1] the fair market value of 1,198.99 acres of Creek land ceded as a result of an erroneous land survey made to effect the sale, by treaty, of 175,000 acres of Creek land to the United States. Creek Nation v. United States, 18 Ind. Cl.Comm. 434 (1967). In the second, rendered on June 30, 1969, the Commission held that appellee was entitled to just compensation under Section 2, Clause (1) of the Act and the Fifth Amendment for the taking of the land. Creek Nation v. United States, 21 Ind. Cl.Comm. 278 (1969). Both decisions were rendered following a decision of this court, 168 Ct.Cl. 483 (1964), remanding the case to the Commission for the determination of appellee's rights under Section 2, Clauses (3) and (5) of the Indian Claims Commission Act.

The complex facts out of which this litigation arises are set out in detail in two previous decisions of this court.[2] The facts necessary for the disposition of this appeal are as follows: In 1866, appellant, by treaty, obtained the western half of the Creek Nation's domain in Oklahoma, and granted portions of this land west of the "Creek dividing line" to

1. For convenience, the Indian Claims Commission Act of 1946 will hereinafter sometimes be referred to as the "Act," and the Indian Claims Commission will be referred to as the "Commission."

2. Creek Nation v. United States, 168 Ct. Cl. 483 (1964) ; Id., 93 Ct.Cl. 561 (1941).

the Seminole Nation. When a survey of this "Creek dividing line" was finally made by appellant in 1871, it was discovered that the Seminoles had settled far to the east of this line on part of the Creek territory. In attempting to rectify this error, appellant entered into a treaty with the Creek Nation in 1881, whereby the United States purchased from the Creeks for $175,000 an additional 175,-000 acres immediately east of the line as surveyed in 1871. When a survey was run in 1888 to establish a new eastern boundary, appellant's surveyor Hackbusch included 176,198.99 acres instead of 175,000 in the new tract. All of this land, including the additional acreage, was allotted and patented to the Seminoles.

In 1889, the United States and the Creek Nation entered into an agreement, ratified by the Congress on March 1, 1889 (25 Stat. 757), in which the Creeks released their claims to the lands west of the "Creek dividing line." [3] The error in the Hackbusch survey of 1888 was not discovered until sometime in 1930.

The Creeks first sued the United States in 1937, under the jurisdictional act of May 24, 1924 (43 Stat. 139, as amended, 50 Stat. 650 (1937)), asking just compensation for the 1,198.99 acres of land which were ceded as a result of the erroneous survey in 1888. This court, under that jurisdictional act, denied recovery on the ground that the Creek Nation intended under the 1889 agreement to grant to the United States the title to all the land as surveyed and which was not a part of the Creek homeland, even though it later developed that the tract contained more acres than contemplated by the 1881 agreement. The court found that

none of the 1,198.99 acres was occupied as a part of the Creek homeland. *Creek Nation, supra,* 93 Ct.Cl. 561 (1941).

Thereafter, appellee brought suit before the Indian Claims Commission under Section 2, Clauses (3) and (5) of the Indian Claims Commission Act of 1946. The latter clauses of Section (2) of the Act permit recovery on the following claims:

* * * (3) claims which would result if the treaties, contracts, and agreements between the claimant and the United States were revised on the ground of fraud, duress, unconscionable consideration, mutual or unilateral mistake, whether of law or fact, or any other ground cognizable by a court of equity; * * * and (5) claims based upon fair and honorable dealings that are not recognized by any existing rule of law or equity. * * *

The Commission granted appellant's motion for summary judgment on the ground that this court's 1941 decision was res judicata of the claims asserted under the Indian Claims Commission Act. *Creek Nation v. United States,* 12 Ind. Cl.Comm. 54 (1963). On appeal, we reversed the Commission. *Creek Nation, supra,* 168 Ct.Cl. 483 (1964). We held the doctrine of res judicata inapplicable since the Indian Claims Commission Act of 1946 created new causes of action which necessarily had not been before the court in 1941.

Thus the Indian Claims Commission Act has done two things with regard to causes of action. First, it permits *revision* of treaties and agreements, whereas the court under the special acts was restricted to a construction or interpretation of the treaty or agree-

3. The agreement, in pertinent part, provided:

"I. That said Muscogee (or Creek) Nation, in consideration of the sum hereinafter mentioned, hereby absolutely cedes and grants to the United States, without reservation or condition, full and complete title to the entire western half of the domain of the said Muscogee (or Creek) Nation lying west of the division line surveyed and established under the said

treaty of eighteen hundred and sixty-six, and also grants and releases to the United States all and every claim, estate, right, or interest of any and every description in or to any and all land and territory whatever, except so much of the said former domain of the said Muscogee (or Creek) Nation as lies east of the said line of division, surveyed and established as aforesaid, and is now held and occupied as to home of said nation."

ment to the extent that the interpretation was not inconsistent or in conflict with the terms of the treaty or agreement. Second, the act permits consideration of Indian claims under the broad scope of "fair and honorable dealings," a latitude again which the court lacked prior to passage of the act. Choctaw Nation v. United States, 318 U.S. 423 [63 S.Ct. 672, 87 L.Ed. 877] (1942). [168 Ct.Cl. at 489–490 (Emphasis in original)]

We further held that the related doctrine of collateral estoppel was inapplicable because of changes in the controlling legal principles resulting from the passage of the Indian Claims Commission Act. "Although certain facts may have been decided by the court, the findings cannot raise an estoppel as to an issue not litigated." 168 Ct.Cl. at 495.

Accordingly, the case was remanded to the Commission for a hearing on the merits of the Creeks' claim, "either under section 2, clause 3, which permits revision of the agreement because of mutual or unilateral mistake, or under clause 5, which permits revision on grounds of fair and honorable dealing[s], or both." 168 Ct.Cl. at 498.

After the order of remand, the Commission took the following steps. On September 27, 1965, a hearing was held, wherein documentary evidence was received relating to the liability of the United States under the Indian Claims Commission Act. On July 6, 1967, the Commission rendered the first of two decisions based on that evidence. *Creek Nation, supra,* 18 Ind.Cl.Comm. 434 (1967). The decision of July 6, 1967, was grounded on and expanded upon the Commission's ultimate finding to the effect that "under Clause (3) of Section 2 of the Indian Claims Commission Act * * * defendant is liable to petitioner for the fair market value of the said 1,198.99 acres of land" as of the date or dates when these lands were allotted, sold, or patented. 18 Ind.Cl.Comm. at 449

(finding 15). In its opinion, the Commission made the following pertinent statements of fact and conclusions of law:

At the time this 1889 agreement was executed, both parties labored under the misapprehension that the 175,000-acre Seminole tract as surveyed by Hackbusch in 1888 contained only the 175,000 acres ceded by the Creek Nation to the United States under the 1881 agreement. Subsequent events disclosed a mutual mistake of fact on this matter.

\* \* \* \* \* \*

Nothing was paid for \* \* \* the 1,198.99 acres included by mistake in the Seminole tract surveyed by Hackbusch. Neither party actually intended to include the 1,198.99 acres in the 1889 agreement because neither party was aware at that time of the Hackbusch error. Had the error been known, an adjustment for it would doubtless have been made. \* \* \*

In the past, Congress, by agreement and appropriate legislation, has provided a remedy for erroneous surveys as shown in Finding 8 herein. We believe that one of the purposes of the "mutual or unilateral mistake" provision of Sec. 2 Clause (3) of the Indian Claims Commission Act was to provide a remedy for just such a situation as we have here. \* \* \* [18 Ind.Cl. Comm. at 454–55, 458]

The Commission reserved decision as to the date or dates for valuation of the 1,198.99 acres and appellee's entitlement to just compensation, including interest from the valuation dates.

Thereafter, in a decision rendered on June 30, 1969, the Commission determined the dates on which the 1,198.99 acres of Creek land should be valued for determining the amount of the recovery.[4] *Creek Nation, supra,* 21 Ind.Cl. Comm. 278 (1969). There is no dispute as to the correctness of the dates thus determined for valuing the land. After noting that no interest may be charged

4. The Commission concluded that the lands should be valued as of the dates when

allotment certificates and patents were issued by the United States.

on a judgment against the United States in the absence of a specific statutory provision for such a charge or unless the taking was under the Fifth Amendment, the Commission then went on to hold that appellee was entitled to just compensation under the Fifth Amendment.

> * * * Just compensation was never a specific issue in the earlier 1941 *Creek* decision by the Court of Claims. There the 1889 release was held to bar the claim; an adjudication of the taking itself was never reached. In any event, the Court indicated in its later decision (The Creek Nation v. United States, 168 Ct.Cls. 483, 488 (1964)) that neither res judicata nor collateral estoppel were applicable and specifically said " * * * our 1941 decision is not controlling today." (p. 497). * * * [21 Ind. Cl.Comm. at 289]

The Commission noted finally that it had "[i]n effect, * * * amended plaintiff's petition so as to include a claim and recovery under Section 2, Clause (1) of the Indian Claims Commission Act." 21 Ind.Cl.Comm. at 290. The latter clause of Section 2 of the Act permits recovery on "claims in law or equity arising under the Constitution * * *."

It is from the above July 6, 1967, and June 30, 1969, decisions of the Indian Claims Commission that appellant brings this appeal. Appellant maintains that the issue of appellee's entitlement to just compensation under the Fifth Amendment is res judicata, as a result of this court's 1941 *Creek* decision. The just compensation claim, appellant contends, is also barred by the doctrine of collateral estoppel. Appellant further maintains that there was insufficient evidence in the record upon which the Commission could ascertain the "subjective intent" of the Creek Nation at the time the 1889 agreement was entered into, and that the findings of the Commission were inadequate for it to conclude that appellee was entitled to recover under the "mutual mistake" provision of Section 2, Clause (3) of the Indian Claims Commission Act.

Appellee, on the other hand, urges the court to affirm the Commission. Appellee relies on the 1964 *Creek* decision, wherein the court held the doctrines of res judicata and collateral estoppel inapplicable to appellee's claim under the Act. Appellee concedes that it sued to recover just compensation in the case decided in 1941, but stresses that the court did not reach that argument. Appellee maintains, finally, that there was, in fact, sufficient evidence in the record upon which the Commission could determine the subjective intent of the Creeks at the time the 1889 agreement was signed, and that the findings of the Commission were adequate to support its determination of appellant's liability under the Act.

For the reasons stated below, we reverse the June 30, 1969, decision of the Commission, insofar as it held that appellee was entitled to just compensation under Section 2, Clause (1) of the Indian Claims Commission Act and the Fifth Amendment. We affirm the July 6, 1967, decision of the Commission, holding that appellee was entitled to recover under Section 2, Clause (3) of the Act, and the decision of June 30, 1969, insofar as it determined the dates on which the lands in question are to be valued for determining the amount of the recovery.

We consider first the intent and purpose of our 1964 decision in Appeal No. 9–63. It appears that the Commission misinterpreted that decision. In 1964, we held that the Creek Nation's claim under Section 2, Clauses (3) and (5) of the Indian Claims Commission Act was not res judicata since the Act afforded and the clauses provided new causes of action which "could not have been reached by the court" in 1941. *Creek Nation, supra,* 168 Ct.Cl. at 490. We cited Commissioner of Internal Revenue v. Sunnen, 333 U.S. 591, 68 S.Ct. 715, 92 L.Ed. 898 (1948), for the well settled proposition that if the claim presented is one which could not have been entertained in an earlier case, res judicata does not apply, "even though recovery could have been had * * * on some theory cognizable by the court at that time."

Accordingly, we directed the Commission to ascertain "whether the Indians have had their day in court on the specific issues and factual presentations urged in the second suit." *Id.*

Implicit in our 1964 decision was the determination that res judicata *was* applicable with regard to appellee's entitlement to just compensation. Although the 1941 *Creek* decision focused on the effect of the 1889 release, the just compensation issue is conceded to have been before the court and is thus res judicata. "[A] judgment entered in an action conclusively settles that action as to all matters *that were or might have been* litigated or adjudged therein." [Emphasis added] Partmar Corp. v. Paramount Pictures Theatres Corp., 347 U.S. 89, 90–91, 74 S.Ct. 414, 98 L.Ed. 532 (1954), and cases cited therein. Appellee's taking claim, unlike that under Section 2, Clauses (3) and (5) of the Indian Claims Commission Act, is one which *could* have been reached by the court in 1941.[5]

Furthermore, a reading of our statement in 1964 that "our 1941 decision in this case is not controlling today" [168 Ct.Cl. at 497], upon which the Commission and now appellee rely, in context, indicates that it was addressed to the effect of the 1941 *Creek* decision on a 1952 decision of the Indian Claims Commission (Creek Nation v. United States, 2 Ind.Cl.Comm. 66 (1952)) in which the Commission considered the subjective intent of the Creeks at the time they entered into the 1889 agreement. We simply noted that our 1941 decision did not "invalidate" the 1952 Commission decision "for the very reason that we find our 1941 decision in

this case is not controlling today" ; that is, because the 1941 Creek decision is not res judicata as to causes of action which could not have been entertained by the court prior to the passage of the Indian Claims Commission Act in 1946.

Finally, our conclusion that the just compensation issue is res judicata finds support in appellee's briefs to the court on the appeal decided in 1964, wherein appellee (then designated "appellant") urged the court to remand the case to the Commission. Appellee stated:

> * * * Appellee defeated the *legal claim* of the Creek Nation based upon a "taking" by the United States of said 1,198.99 acres under the Fifth Amendment to the Constitution of the United States, presented under the prior jurisdictional Act of May 24, 1924, 45 Stat. 139, by pleading the legal defense of a general release of claims contained in the 1889 Agreement, which it had a right to do in that proceeding. * * * The legal rights of appellant were thus finally settled, and are not resurrected here.
>
> * * * Herein * * * appellant seeks relief based upon causes of action which were not available to it in the prior litigation, and which were created for the first time by the Indian Claims Commission Act. * * * [Appellant's Reply Br., p. 3 (Emphasis in original)][6]

There can be no complaint, therefore, at this late date, that appellee has not had its day in court on the just compensation issue.

■ We reject, however, appellant's contention that there was insufficient

---

5. The doctrine of collateral estoppel, however, does not apply, despite the fact that the taking issue and all of the facts relevant thereto were before the court in 1941, since the issue was not reached by the court. *See* Cromwell v. County of Sac, 94 U.S. 351, 353, 24 L.Ed. 195 (1876) ; and *Creek Nation, supra,* 168 Ct.Cl. at 488, 490–491, wherein we distinguished the doctrines of res judicata and collateral estoppel.

6. The moving brief which the Creek Nation filed with the court in its 1963 appeal is replete with statements acknowledging that our 1941 decision is *res judicata* as to the Creeks' claim for a Fifth Amendment taking, and assertions that the petition filed with the Commission was based upon Section 2, Clauses (3) and (5) of the Indian Claims Commission Act. See pages 2, 3, 4, 5, 17, 20, 21, 22 and 23 of the Creek Nation's brief in Appeal No. 9–63.

evidence in the record upon which the Commission could hold that appellee was entitled to recover under Section 2, Clause (3) of the Indian Claims Commission Act. In 1964, we drew the distinction between the intent of the parties to the 1889 agreement "as evidenced by the specific language of the agreement," and the "subjective intent" of the parties at the time the agreement was signed. 168 Ct.Cl. at 496. The former was decided by the court in 1941; it was for the determination of the latter that the case was remanded to the Commission in 1964. Obviously, ascertaining the Creeks' "subjective intent" nearly a century after the agreement was entered into is difficult, at best. But we must assume that the Congress was aware of this potential difficulty when it created the remedy appellee now seeks.[7] And we must construe the Act so as to effect its remedial purpose and intent. *See* Otoe and Missouria Tribe of Indians, *supra,* 131 F.Supp. at 271, 131 Ct.Cl. at 602. In any event, we are satisfied that there was sufficient evidence in the record, and that the findings are adequate to support, the determination of the Commission that at the time the 1889 agreement was entered into, the parties thereto were laboring under a mutual mistake of fact as to the acreage involved, and that the agreement should be revised and appellee is entitled to recover under Section 2, Clause (3) of the Indian Claims Commission Act. *See* United States v. Seminole Nation, 299 U.S. 417, 422, 57 S.Ct. 283, 81 L.Ed. 316 (1937).

Our conclusion is buttressed by the 1952 decision of the Commission [2 Ind. Cl.Comm. 66], referred to earlier, wherein the Commission considered the 1889 agreement and, as in 1967, held that the subjective intent of the Indians was contrary to the wording of the release. *See* Creek Nation, *supra,* 168 Ct.Cl. at 497.

Accordingly, we reverse the June 30, 1969, decision of the Indian Claims Commission insofar as it held that appellee is entitled to just compensation under Section 2, Clause (1) of the Indian Claims Commission Act of 1946 and the Fifth Amendment for the taking of 1,-198.99 acres of Creek land. We affirm the July 6, 1967, decision of the Commission, holding that appellee is entitled to recover under Section 2, Clause (3) of the Indian Claims Commission Act, and the decision of June 30 1969, insofar as it determined the dates on which the lands in question are to be valued. The cause is remanded to the Commission for the determination, in accordance with this opinion, of the amount of recovery to which appellee is entitled.

Affirmed in part; reversed in part; and remanded.

---

7. The legislative history of the Indian Claims Commission Act has been chronicled in Otoe and Missouria Tribe of Indians v. United States, 131 F.Supp. 265, 131 Ct.Cl. 593, cert. denied, 350 U.S. 848, 76 S.Ct. 82, 100 L.Ed. 755 (1955).